(Decided June 19th, 1895.)

---

# THE LAKE ROLAND ELEVATED RAILWAY COMPANY *vs.* JOSEPH P. WEBSTER.

*Elevated Railways—Liability for Injury to Property Owner.*

When the construction of an elevated railway in a city street diminishes the rental value of property leased to the plaintiff, he is entitled to recover damages therefor to the extent to which the usable value of his premises has been thereby diminished, although the premises are not directly opposite the elevated structure.

The fact that a corporation is authorized to build and operate an elevated railway does not exempt it from liability for injuries to property lying upon or near to the street occupied.

An elevated railway, duly authorized to be constructed, upon a street of a city, is not a nuisance, and no one can maintain an action for the damage caused by such obstruction to travel which he suffers in common with the public at large.

Appeal from the Court of Common Pleas.   The case is stated in the opinion of the Court.   At the trial the plaintiff offered one prayer, which is set forth in the opinion and which was granted.   The defendant offered the following prayers :

*Defendant's 1st Prayer.*—The defendant prays the Court to instruct the jury, that the plaintiff in this action has offered no evidence legally sufficient to entitle the plaintiff to recover.   (Rejected.)

*Defendant's 2nd Prayer.*—That the elevated structure of the defendant and the inclined approach to the same complained of in this case, have been lawfully constructed on North street, with the full authority of the General Assembly of Maryland and the Mayor and City Council of Baltimore ; and that said structure and approach do not constitute a nuisance, and that the defendant is not a trespasser. (Granted.)

*Defendant's 3rd Prayer.*—That the defendant has not actually taken any property of the plaintiff's in this case, and that the plaintiff has no other property in any part of the bed of North street.   (Granted.)

*Defendant's 4th Prayer.*—If the jury shall believe from the evidence that the southern end of the elevated structure complained of in this action reaches the surface of North street more than twelve feet north of the north line of the lot occupied by the plaintiff, and that no part of said elevated structure or the inclined approach thereto is opposite the said lot, and that there is no obstruction to the light or air of the said lot, and that the only obstruction to passage in the bed of North street, by reason of said structure, occurs at a point distant more than twelve feet north of the north line of said lot, as shown upon the plat filed in said cause, then the injury, if any, suffered by the plaintiff, is an injury suffered by him in common with the public different, if at all, only in degree and not in kind from that suffered by the public, and the plaintiff is not entitled to recover. (Rejected.)

*Defendant's 5th Prayer.*—If the jury shall believe from the evidence that after the completion and operation of the defendant's railway over the structure complained of, the owner of said property and the plaintiff entered into a new agreement, whereby the said owner agreed to charge, and the said plaintiff agreed to pay a rent of nine hundred dollars per annum in lieu of the rental of twelve hundred dollars per annum, reserved in the lease offered in evidence, from the date of said new agreement to the end of the term prescribed by said lease, subject in all other respects to the same terms as those prescribed in said lease, and shall further find that the said new agreement was made because of and in contemplation of the supposed injury to the plaintiff by reason of the construction and operation of the defendant's railway, then their verdict must be for the defendant. (Rejected.)

*Defendant's 6th Prayer.*—That in estimating any depreciation in the value of the plaintiff's leasehold interest since the building and operation of the defendant's railway, they must deduct from the amount which they shall find as such depreciation (if any) all amounts which they shall believe from the evidence to have resulted from any or all of the following causes : (1.) The widespread depression of business of all kinds during the commercial panic of 1893–94. (2.) The use of rapid transit railways in the city and suburbs in lieu of horses and carriages.   (3.) The use of bicycles as substitutes for the saddle-horse and the horse and buggy. (4.) The operation of a double track *surface* electric railway on a narrow street, in front of the stables occupied by the plaintiff, with cars running at short intervals, at high rate of speed, in both directions.   (5.) The resort to stables on the outskirts of the city; because of the danger and inconvenience of driving in and across cable and electric railways. (6.) The abandonment of old-fashioned stables for new stables, with improved methods of ventilation and equipped with modern conveniences.   (Granted.)

*Defendant's 7th Prayer.*—That in estimating the damages,

if any, to be awarded to the plaintiff, the jury cannot consider either the good-will of his business or his prospective profits thereupon, or any inconvenience or loss arising from the interruption of his business.   (Granted.)

The Court below (HARLAN, C. J.), granted defendant's second, third, sixth and seventh prayers, and rejected its first, fourth and fifth prayers.   The jury returned a verdict for the plaintiff, assessing his damages at $1,000, and from the judgment thereon the defendant appealed.

The cause was argued before BRYAN, McSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*John N. Steele* and *Francis K. Carey* (with whom was *John E. Semmes* on the brief), for the appellant.

The prayer offered by the appellee and granted by the Court, gave to the jury a wholly misleading and illegal measure of damages.   It instructed the jury that the appellee was entitled to recover the amount which the jury should find that the "*rental value* of the premises," under the lease offered in evidence, had been diminished by the appellant's railway.   Not only does the language, " the rental value of the premises," refer to diminution in the actual selling value of the property, for which the owner of the land and not the tenant can recover, but the prayer failed to instruct the jury to limit the injury to the rental value *during the term,* that is to say, to the *interest of the appellee* in the property, and failed to instruct them to make the proper allowance for the reduction in the rent reserved under the lease.   The true and only legal measure of damages was the difference between the market value of the leasehold term before and after the building and operation of the appellant's railway.

The general rule is that only persons whose lots are opposite an elevated railway structure can recover damages therefor.   *Booth on Street Railways,* sec. 186; *Met. R. Co.* v. *Levy,* 13 N. Y. 367; *Bischoff* v. *N. Y. El. Ry. Co.,* 18 N.

Y. Supp. 865; *Mooney* v. *Same*, 16 Daly, 145; *Ottinger* v. *Same*, 18 N. Y. Supp. 238; *Carr* v. *St. Louis Ry. Co.*, 39 Minn. 296; *Smith* v. *Boston*, 7 Cush. 254; *Buhl* v. *Union Depot Co.*, 98 Mich. 596; *Houck* v. *Wachter*, 34 Md. 265; *Dantzer* v. *Ind. Ry. Co.*, 39 N. E. Rep. (Ind.) 223; *Eberle's case*, 110 Ind. 543 ; *Heller* v. *R. R. Co.*, 28 Kansas, 625 ; *Martin* v. *Ry. Co.*, 47 Mo. App. 457.

The appellee has been compensated by the reduction of his rent, and under such circumstances, it is the landlord and not the tenant who is damaged.   The change in the annual rental creates in law a new lease, although the other terms of the pending lease are not altered.   *Booth on Street Railways*, sec. 204; 23 *Am. & E. Ency.*, 1058; *Kearney* v. *Met. Ry. Co.*, 129 N. Y. 80; *Kernochan* v. *N. Y. El. Ry. Co.*, 128 N. Y. 559; *Jaffray* v. *Greenbaum*, 64 Iowa, 492.

An elevated railway built and operated under lawful authority in a public street, is not liable in damages for losses in business conducted in property abutting upon the street, even though it may be proved that the construction and operation of the elevated railway has in fact caused such losses; nor can alleged injury to possession be measured by losses in business.   *Taylor* v. *Met., &c., Co.*, 50 Sup. Ct. Rep. 311; *Rickett* v. *Met. Ry. Co.*, L. R. 2 H. L. 175 ; *Ches. Co.* v. *Mackenzie*, 74 Md. 50; *Mayor, &c.*, v. *Rice*, 73 Md. 307.

*John Prentiss Poe, Attorney-General*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

The plaintiff below (now appellee) obtained a judgment against the Lake Roland Elevated Railway Company, and the defendant has appealed to this Court.   The evidence is set out in the transcript with great detail ; much more than is required for any reasonable purpose.   The portions of it necessary to present the questions of law which we are to decide might have been fully stated within a much smaller compass.   In February eighteen hundred and ninety-two

the plaintiff rented from William H. Birch the lot known as No. 206 North street, for the term of five years, at the annual rent of twelve hundred dollars. The defendant's railroad runs on North street, and its elevated structure is in the middle of the street; it is not directly in front of the rented premises but it begins about twelve feet north of the northern boundary. The railway was completed and the cars began to run in May, eighteen hundred and ninety-three. The lot rented by the plaintiff is improved by a building which has been used as a livery stable for a number of years, and is not adapted to any other purpose. The plaintiff's business is to keep a livery stable, and he rented the property for that purpose. After the road was in operation, the landlord made a reduction in the rent, bringing it down to nine hundred dollars a year. Evidence was offered in behalf of the plaintiff tending to show that the construction of the elevated portion of the road had been very injurious to his leasehold interest, and had greatly diminished its rental value; and evidence was offered in behalf of the defendant tending to show the contrary. The testimony was extremely conflicting; some of it was to the effect that the rental value was entirely destroyed; and on the opposite side it was testified that it had not been affected at all. The testimony was addressed to the jury; it is altogether unnecessary for us to state any of the details. On the prayer of the plaintiff the Court gave to the jury the following instruction: "The plaintiff, by his counsel, prays the Court to instruct the jury that if they shall find from the evidence that the rental value of the premises known as Nos. 206 and 208 North street, and occupied by the plaintiff as tenant of William H. Birch under the written lease offered in evidence, has been diminished by the construction and use of the elevated railway of the defendant corporation on North street, then the plaintiff is entitled to recover, and the measure of damages is the amount which the jury shall find said rental value has been so diminished."

The elevated structure of the defendant on North street

is lawfully authorized, and therefore its obstruction to travel on the street cannot be regarded as a nuisance. It is clear that no one can sustain an action for damage caused by this obstruction which he suffers in common with the public at large. But the right to build this elevated road does not imply exemption from responsibility for injuries inflicted on private property by its operation and construction. It is hardly necessary to add anything to the discussions which have heretofore taken place on this subject. In *Baltimore and Potomac R. R. Co.*, v. *Reaney*, 42 Maryland, 117, the question was fully considered, and the principles then declared have ever since been considered as settled in this State. The railroad company was authorized to construct a tunnel under the bed of Wilson street, in the city of Baltimore, and by the excavation of the street for the purpose of constructing the tunnel, a house on Madison avenue was injured, the foundation being weakened and the walls caused to crack. The question was, whether the owner of the house was entitled to recover? This Court, in a very able and luminous opinion by JUDGE ALVEY, held that although the excavation of the street was lawful and the work was done in a lawful manner, the railroad company was liable for the damages which actually resulted from the work. And in *O'Brien* v. *Baltimore Belt R. R. Co.*, 74 Maryland, 374, the right of adjoining lot owners was fully recognized to redress for any substantial injury to their property rights, "*produced by the construction or operation of the railroad in the street.*"

It has been objected in the present case, that the elevated structure was not *immediately* in front of the plaintiff's stable, but about twelve feet north of it. But the right to redress depends on the question whether damage was done, and not on the proximity or distance of the operative cause of the injury. In *Reaney's case*, the injured house was not on the same street with the tunnel, and was distant more than twenty-four feet from the corner. The ground of recovery was the damage caused by the tunnel; the measurement of distance was not an element in the case. Article

23, section 169 of the Code was referred to in the argument. If we compare this section with the one hundred and sixty-seventh of the same Article, to which it refers, we will be enabled to see its meaning clearly.    It is intended to enable a railroad company to acquire a right to occupy a street or other public way for the location of its tracks, and it authorizes condemnation in the same manner as the property of private persons may be condemned under section one hundred and sixty-seven; but there is one addition to its responsibilities.    By the one hundred and sixty-seventh section, the road is compelled to pay only the damages which the owner of the condemned land will sustain by the use and occupation of his property by the corporation; whereas, when the tracks are laid upon a public street, the one hundred and sixty-ninth section expressly enacts, that the corporation shall be responsible for injuries done by the location of its tracks to private property lying *upon or near* to the street so occupied.    This is an exceptional and remarkable feature of corporate responsibility attached by the statute to the use of streets by railroads.    There is a further provision (not now in question), that no railroad company shall be allowed to pass through the city of Baltimore without the consent of the municipal authorities.    The section which we have been considering was intended to give statutory sanction to this responsibility, but it cannot be supposed that it could be construed so as to relieve railroad companies from liability for any other damages which they might cause to private property.    It may serve, however, to set in a clear light the mistake of supposing that they are responsible only to abutting owners.

The plaintiff's prayer claims damages for the diminution of the rental value of his leasehold property.    His testimony was that before the building of the road the annual value of the property was twelve hundred dollars, and the construction and use of the road reduced this value so much, that it was worth nothing.    His landlord remitted three hundred dollars of the rent, leaving him still bound to pay nine hun-

dred dollars a year.   If the jury found that the *usable* value of the property was destroyed or diminished by the cause alleged, they were justified in finding a verdict for the damage done.   Great exception is taken to the language of the prayer.   But it seems to us that its fair meaning is that the jury are to find the damages which the plaintiff sustained as tenant of the premises by the diminution of its rental value. It could not easily be construed as meaning that they were to find the damages which the landlord had suffered.   It is not questioned that the draughtsman of the prayer might have presented the question of damages in a different manner as was done in *Rice's case*, 73 Maryland, 307.   He has chosen, however, to ask compensation for the diminution of the usable value of his premises ; this was certainly an injury to him, and he certainly ought to recover for it.   The rejected prayers of the defendant are all inconsistent with the views which we have expressed, and ought not therefore to have been granted.

*Judgment Affirmed.*

(Decided June 20th, 1895.)