(Decided June 16th, 1896).

---

## WILLIAM H. BIRCH *vs.* THE LAKE ROLAND ELEVATED RAILWAY COMPANY.

*Injury to Property from Elevated Railway—Measure of Damages—Evidence.*

An elevated railway was constructed in the city of Baltimore under an ordinance which provided that the company should be responsible for injuries judicially ascertained to be inflicted thereby upon private property. In an action by the owner of land abutting upon a street used by the elevated railway to recover damages, *held,* that if plaintiff's property was injuriously affected by the construction of the railway, he was entitled to recover, and the measure of damages is the difference between the rental or usable value of the property without the railway and said value as affected by the existence of the railway.

In such case, if plaintiff's property was built for a livery stable and in its existing condition is available for that purpose only, he is entitled to recover for the diminution in the rental value of the property for the purpose of a livery stable.

In the above action evidence is admissible on the part of the plaintiff to show that after the construction of the elevated road he had reduced the rent of the premises reserved by a lease, because he and his tenant believed that the railway would have an injurious effect upon the usable value of the property.

Appeal from the Court of Common Pleas. At the trial the plaintiff offered the following prayers :

*Plaintiff's 1st Prayer.*—The jury are instructed that by the terms of Ordinance No. 23 of the Mayor and City Council of Baltimore, approved April 8th, 1891, read in evidence, the defendant was authorized to build its elevated railway

on North street, upon the express condition that it should be responsible for injuries judicially ascertained to be done to private property by the construction and use of said elevated railway ; and if the jury shall find from the evidence that the plaintiff, at the time of construction of said elevated railway, was the owner of the leasehold estate in the property known as " No. 206 and 208 North street," as shown in the evidence, and is still such owner ; and if the jury shall find that the said property has been injuriously affected by the construction or use of said railway, then the plaintiff is entitled to recover in this action, and the measure of damages in the difference between the *rental or usable* value of said property without said railway and the rental or usable value thereof as affected by the existence of said railway.

This prayer was modified by the Court by inserting the words " market value," instead of " rental or usable value " in the final clause relating to the measure of damages.

*Plaintiff's 2nd Prayer.*—If the jury shall find from the evidence that the property of the plaintiff described in the declaration was adapted for use as a livery stable, and had been for many years used as a livery stable, and that the construction or use by the defendant corporation of its elevated railway on North street has diminished the rental or usable value of said property for such purposes, then the defendant, by the express condition of Ordinance No. 23, approved April 9th, 1891, read in evidence, is responsible to the plaintiff for such diminution of the rental or usable value of the property for the purposes of a livery stable, and it is no defence to this action to show that by tearing down the said livery stable and erecting upon the lot a building suitable for some other business, the plaintiff might make the rental or usable value of said property equal to or more than its rental or usable value before the construction of said elevated railway.    (Rejected).

*Plaintiff's 3rd Prayer.*—If the jury shall find from the evidence that the value of the plaintiff's property as de-

scribed in the declaration as a livery stable has depreciated since the construction by the defendant of its elevated railway on North street, then the plaintiff is entitled to recover in this action the amount of such depreciation ; provided the jury shall further find that such depreciation was caused by the construction* and use of said elevated railway. (Rejected).

*Plaintiff's 4th Prayer.*—The jury are instructed that the plaintiff had a lawful right to rent or use his property described in the declaration as a livery stable, and has a right, notwithstanding the construction by the defendant of its elevated railway on North street, to continue to rent or use his said property for a livery stable ; and if the jury shall find that the construction, use and maintainance of said elevated railway has diminished the rental or usable value of said property as and for a livery stable, then the defendant is responsible to the plaintiff for such diminution or *decrease* notwithstanding the jury should further find that if the building on the lot of the plaintiff was torn down and a new building erected thereon suitable for some other business, the value of the plaintiff's property might be enhanced thereby. (Rejected).

*Plaintiff's 5th Prayer.*—If the jury shall find from the evidence that the construction or use by the defendant of its elevated railway on North street has rendered access to, or egress from, the livery stable owned by the plaintiff, and known as Nos. 206 and 208 North street, less easy, convenient or safe than such access or egress was before said railway was constructed, and that in consequence thereof the usable market value of said property as and for a livery stable has been diminished or decreased, then the plaintiff is entitled to recover ; and the measure of damage which he is entitled to recover is such sum as the jury shall find from the evidence will compensate him for the diminished or decreased rental value or market value of his said property as and for a livery stable, caused by the construction or use of said railway.

But on the other hand, that if the jury shall find that the construction or use of said railway has not rendered ingress or egress to and from said livery stable less easy, convenient or safe than such ingress or egress were prior to the construction and use of said railway ; and that notwithstanding said construction and use the property of the plaintiff, if repaired and put in good rentable condition, will rent or sell as and for a livery stable for as much as before the construction and use of said railway, then the plaintiff is not entitled to recover.    (Rejected).

The defendant offered the following prayers :

*Defendant's 1st Prayer.*—That unless the jury shall believe from the weight of the evidence that the market value of the plaintiff's leasehold lot has been diminished by the construction and maintenance of the elevated structure of the defendant and the inclined approach to the same, then their verdict must be for the defendant.    (Granted).

*Defendant's 2nd Prayer.*—That the jury cannot allow the plaintiff any damages for any alleged obstruction of North street, or any alleged interference with access to plaintiff's property by the construction and operation of a double track electric surface railway opposite or near the plaintiff's lot. (Granted).

*Defendant's 3rd Prayer.*—That there is no evidence in the cause that the plaintiff has suffered any loss of rent from his property by reason of the construction and operation of the defendant's railway.    (Rejected).

*Defendant's 4th Prayer.*—That in determining the question of alleged pecuniary loss to the plaintiff the jury must consider the benefits, if any, of the railway of the defendant to the plaintiff, and they may assess such benefits as it is fairly and reasonably apparent that the property of the plaintiff has received from the building and operation of the defendant's railway, other than the general benefits to the community, and the jury cannot indulge in vague speculations or conjectures ; and if they shall find that said advantages to said property, if they find any, equal or exceed any

injury to said property, if they shall find any, then their
verdict must be for the defendant.    (Granted).

  *Defendant's 5th Prayer.*—The defendant prays the Court
to instruct the jury, that the provisions in regard to the
payment of damages by the defendant contained in Ordi-
nance No. 23, approved April 8th, 1891, do not make the
defendant liable for any but legal damages, or for any other
damages than those provided by Article 23, section 169, of
the General Railroad Law.    (Rejected).

  The Court below (HARLAN, C. J.) rejected all of plain-
tiff's prayers as offered, and granted the defendant's first,
second and fourth prayers and rejected its third and fifth
prayers.    The Court also gave the following instructions in
lieu of the plaintiff's third prayer :

  If the jury shall find from the evidence that the market
value of the plaintiff's property, as described in the declara-
tion, has depreciated since the construction by the defend-
ant of the elevated railway on North street, then the plain-
tiff is entitled to recover in this action the amount of such
depreciation ; provided the jury shall further find that the
amount of such depreciation was caused by the construction
and use of said elevated railway.

  The jury returned a verdict for the plaintiff for one cent
damages, and plaintiff appealed.

  The cause was argued before MCSHERRY, C. J., BRYAN,
BRISCOE, PAGE, ROBERTS and BOYD, JJ.

  *John P. Poe,* for the appellant.

  The rulings of the Court below were erroneous.    1st.
Because by granting the appellant's first and third prayers
with the modifications put to them by the Court, and by re-
jecting his prayers as offered, the right of the appellant to
recover was restricted to the diminution in the *market* value
of the property generally, whereas he should have been
permitted to claim damages for the diminution in the *rental*
or *usable* value, as well as for the diminution in the *market*

value. *Mackenzie* v. *The Chesapeake Telephone Co.,* 74 Md. In *Webster's case* the measure of damages insisted on by the railway company was the diminished *rental* value of the premises. The same rule should be applied here.

2d. Because the Court denied to the appellant the right to recover for the diminution in the value of *his property as and for a livery stable,* whereas, inasmuch as the property was originally built for such purpose, and in its existing condition was available for that purpose only, the appellant should have been permitted to go before the jury and claim such damages as the evidence showed he had sustained in the diminished value of his property for that purpose, occasioned by the construction and use of the railway.

The appellee contended that if the livery stable were torn down and replaced by a new and different structure, and the lot were utilized, or attempted to be utilized, for some other purpose than a livery stable, the property would be found not to have been injuriously affected at all in value by the construction of the railway. Surely this contention cannot be sound. The appellant was entitled to use his property for the purposes to which it was adapted and for which it had been used many years. The business carried on was legitimate; was in no sense a nuisance, and but for the construction of the railway could have been continued to have been carried on as profitably as ever.

It would certainly be giving a narrow and unwarranted interpretation to the ordinance to adopt the contention of the appellee, and it is respectfully submitted, therefore, that all the prayers of the appellant as originally offered should have been granted, without the modifications put by the Court to the first and third; and that the Court also erred in granting the appellee's first and fourth prayers. It was error also to grant the appellee's second prayer. As an abstract proposition in a proper case it announces, perhaps, a correct principle, but in this case, it was calculated to mislead the jury, and for that reason it should have been rejected.

*Francis K. Carey* and *William H. Buckler* (with whom were *Steele & Semmes* on the brief), for the appellee.

The first exception taken by the plaintiff is based upon the Court's refusal to admit Webster's oral testimony in regard to the alleged reduction of the rent.    It is unnecessary to call the Court's attention to the impropriety of such testimony on general principles under such circumstances. The landlord·and tenant, acting in entire harmony, docketing simultaneous suits by the same counsel, could, if they were so disposed, make up a claim based upon such testimony and the defendant would be wholly unable to disprove it.    But there is no better established principle of law than that which requires a plaintiff to enforce his plain legal rights for his own protection and to use reasonable and proper precaution to prevent or diminish any injury for which he claims damages from another.

The plaintiff's first and third prayers as modified by the Court, correctly stated the law.    In the case of *P. & R. R. Co.* v. *Getz*, 113 Pa. 219, the Court held: " Whether the assessment of damages be to the tenant in fee, for life, or for years, the rule as to the measure of damages is precisely the same.    What was the value of the property, that is to say, the tenant's interest therein, unaffected by the injury?    What was its value as affected by the injury?    The difference is the true measure of compensation.    The damage must be measured according to the market value for any useful purpose."

The only changes made by the Court in the defendant's first and third prayers were to strike out the words " as a livery stable " in the third prayer and to substitute for the words " rental or usable value " the words " market value " in both prayers.    In the plaintiff's fifth prayer he had used the language " decreased rental value *or market value*," while the defendant's prayers had used the words " market value."    As it must be conceded that the words " market value " are comprehensive enough to include rental or usable value, it could only create confusion in the minds of

the jury to permit the use of the included language in addition to the general terms.   The plaintiff's first prayer as granted allowed the jury to find for the plaintiff, in damages, "if the jury shall find from the evidence that the said property has been injuriously affected by the construction and use of the said railway."   The vice of the plaintiff's second, fourth and fifth prayers is that they all attempt to confine the injury to the property as now improved as a livery stable, without regard to the question as to whether it may not be of greater value to the plaintiff for other purposes than it was before the structure was erected.

As an illustration of the impropriety of such instructions the Court will observe that the application of a measure of damages to the property which limits the injury to the property for the use to which it happens to be put at the time of the alleged injury, might work the greatest hardship to the plaintiff.   Thus, in the *Hibernian case*, which is now before this Court, and which was tried just before the *Burch case*, the lot is improved by an old brick building used for a school-house, and, as there was no necessity for approaching it by vehicles, it was conceded that, even from the plaintiff's standpoint, the injury to the property for the purposes to which it was then adapted and for which it was being used, was insignificant.

The words "market value" are so comprehensive in their character as to give to both parties the full benefit of any proof which can be adduced which tends to show whether or not the plaintiff is in any worse condition than he was before the structure complained of was built.

ROBERTS, J., delivered the opinion of the Court.

This case, in almost every material respect, is identical with the decision of this Court in *Webster's case*, reported in 81 Md. 529.   There was a judgment in favor of the plaintiff below (appellant here) for nominal damages, and from that judgment this appeal is taken.   There are two exceptions contained in the record, the first of which relates to

the admissibility of the proof offered by the plaintiff, the other, to the rejection by the Court of the plaintiff's five prayers, and to the granting of the plaintiff's first and third prayers, with certain modifications made by the Court, and to the granting of the defendant's (now appellee's) first, second and fourth prayers. The essential facts are, that the plaintiff is now and has been for a number of years past, the owner of a leasehold estate, for the term of ninety-nine years renewable forever, in a lot of ground and premises in the city of Baltimore, which is subject to an annual ground-rent of three hundred dollars. The lot is improved by a building, which has been used as a livery stable for a number of years, and is not in its existing condition adapted to any other purpose. The plaintiff has been accustomed to derive a large yearly rental from said premises as a livery stable.

The defendant has constructed, maintains and operates an elevated and surface railroad, which passes in front of the plaintiff's lot. The elevated position of the railroad is not directly in front of the plaintiff's premises, but begins about twelve feet distant from the northern boundary of the lot. The railroad has been in operation since the month of May, eighteen hundred and ninety-three. The plaintiff offered to prove by Webster who was the appellee in 81 Md. 529, that shortly after the cars began to run over the defendant's road, he and Webster, who was his then tenant, had modified the terms of the lease between them by reducing the rent from $1,200 a year, to $900 a year ; that this reduction was made in order to retain Webster as his tenant, and in view of what they both believed would be the injurious effect of the construction and use of defendant's road upon the rental value of the property as a livery stable.

This offer constitutes the plaintiff's first exception. We think the Court below was clearly in error in refusing to permit the testimony to be given. It was after all and at most nothing but an expression of the opinion of Webster, and of the plaintiff, as to the effect upon the plaintiff's lease, produced by the construction of the defendant's road. We

do not perceive where in any respect it violated any rule of
evidence, and the fact that it may have been somewhat in-
significant in its effect, its weight was for the jury, and not
for the Court.

Coming then to the consideration of the various prayers
which constitute the second exception, we think there are
but two propositions in the determination of this appeal now
necessary to be decided.    Separate consideration of the
prayers contained in this exception will not therefore be re-
quisite.    The first proposition, which we think untenable,
is the granting of the plaintiff's first prayer as modified by
the Court.    Without this modification made, the prayers
correctly stated the law of the case, and should have been
granted.    Mr. CHIEF JUDGE McSHERRY, in delivering the
opinion of this Court, in *Mackenzie's case*, 74 Md. 50, says :
" The true measure of damages in such a case as this, is not
what a particular individual would be willing to charge for
having the pole put up or remain ; nor the amount some
other person might consider the rental value was depreci-
ated for the purposes of his business ; but where the *land*
of the plaintiff *is not taken nor his soil actually invaded*, the
measure of damages, as adjudged in many cases, is either
first, the extent to which the *rental* or *usable* value of the
particular property has been diminished by the trespass or
injury complained of ; *Balto. and Ohio Railroad Co.* v. *Boyd
et al.*, 67 Md. 41 ; *Wood, &c.*, v. *State, use of White*, 66 Md.
61 ; or, secondly, the difference in the value of the property
before the construction of the pole, and its value afterwards,
if the depreciation in value has been caused by the erection
and maintenance of the pole.    *Shepherd* v. *Baltimore and
Ohio Railroad Co.*, 130 U. S. 426." And in *Webster's case*,
*supra*, JUDGE BRYAN said, " The plaintiff's prayer claims
damages for the diminution of the rental value of his lease-
hold property.    His testimony was that before the building
of the road the annual value of the property was twelve
hundred dollars, and the construction and use of the road
reduced this value so much, that it was worth nothing. His

landlord remitted three hundred dollars of the rent, leaving him bound still to pay nine hundred dollars a year.    If the jury found that the *usable* value of the property was destroyed or diminished by the cause alleged, they were justified in finding a verdict for damages done.    Great exception is taken to the language of the prayer.    But it seems to us that its fair meaning is that the jury are to find the damages which the plaintiff sustained as tenant of the premises by the diminution of its rental value.    It could not easily be construed as meaning that they were to find the damages which the landlord had suffered."    The rule of law applicable in *Webster's case*, who was the then tenant of the plaintiff here, finds equal force and pertinent application in this case, where the original lessee is suing to recover damages for the injury done to his possession.    The second proposition as contained in the plaintiff's prayers to the effect that the plaintiff was entitled to recover for the diminution in value of his property *as and for a livery stable* is undoubtedly correct.    The property was originally built for such purpose and in its existing condition was available for that purpose only.    He was therefore entitled to claim such damages as the evidence showed he had sustained in the diminished value of his property for that purpose, occasioned by the construction and use of the road.    For the reasons assigned, the judgment below must be reversed.

> *Judgment reversed with costs, and new trial awarded.*

(Decided June 16th, 1896).