# THE BALTIMORE AND OHIO RAILROAD CO.

## *vs.*

## ELIZABETH KAHL.

---

# MAYOR AND CITY COUNCIL OF BALTIMORE

## *vs.*

## SAME.

*Streets: change of grade; liability for damages; municipal corporations; railroad companies.   Damages: compensation only; punitive—.*

Where a municipality regrades a street, skillfully and without trenching upon the abutting property or affecting the owner's easements of light and air, it is not liable in consequential damages, even though the means of egress from and ingress to the property are affected by the grade.          p. 302

But where a railway, for its own convenience, changes the grade of a street, it is liable to the owner of the abutting land for consequential injuries, even though the change is authorized by the municipality.                    p. 302

Apart from cases of punitive damages, compensation for injuries should be precisely commensurate with the injury done.

p. 304

When the permanent depreciation in the value of property, caused by the acts of the defendant, has been ascertained by using the rental value as a basis of calculation, it represents the whole damage recoverable, and the loss of rent may not be added as an additional and independent element of damages.      p. 304

Where abutting property was permanently injured by a railroad by changing the grade of the street, it was *held,* that, tax bills and assessments for two or three years after the act complained of, were of too remote a period to be admissible in evidence, to show the expenses upon the property, in an inquiry to esatblish its value.                          p. 307

*Decided December 2nd, 1914.*

Two appeals in one record from the Baltimore City Court. (SOPER, J.)

The facts are stated in the opinion of the Court.

The causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Duncan K. Brent* and *Wm. Irvine Cross,* for the Baltimore and Ohio Railroad Company, one of the appellants.

*Benjamin W. McKindless, Assistant City Solicitor,* for the Mayor and City Council of Baltimore.

*Edward M. Hammond* and *Edward L. Ward,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellee, Elizabeth Kahl, is the owner of a leasehold lot of ground located on the north side of Hamburg street, in Baltimore City. The lot is improved by a building which was formerly used as a private residence, but for some time prior to the infliction of the injuries complained of in this case was used as a store. The building is located at the northeast corner of Hamburg street and Plum alley. This suit was instituted against the Baltimore and Ohio Railroad Company and the Mayor and City Council of Baltimore to recover damages alleged to have been caused to the property by the construction of the approaches and bridge which were erected on the south side of Hamburg street and over Eutaw and Howard streets for the purpose of carrying the traffic over those streets. In front of the plaintiff's property the approach to the bridge is about seven feet high and from the north side of the approach in front of the plaintiff's lot to the curb there is a clear space of approximately nineteen feet, and from the north building line, or front of the plaintiff's house, to the north side of the approach there is a space of about twenty-nine feet. The north side of Hamburg street from the approach to the curb—a distance of about nineteen feet—is not closed or obstructed, and is in practically the same condition as it was before the approach was built. There was no taking of the plaintiff's property. The plaintiff offered evidence tending to prove that the property had been injured by the construction of the approach and bridge.

Ordinance No. 387 of the Mayor and City Council of Baltimore, approved August 16, 1909, which authorized the construction of the bridge and its approaches, and the circumstances which led to its passage, as well as the manner in which the actual work was done, have been fully considered in the cases of *Wallers* v. *Baltimore and Ohio Railroad Company,* 120 Md. 644, and *Baltimore and Ohio Railroad Company* v. *Kane et al., ante* p. 231. What was said in those cases need not be repeated in this opinion. The trial resulted in

a judgment against both defendants, and this appeal was taken by both defendants from the judgment.

At the conclusion of the testimony for both parties, the Court granted two prayers on behalf of the plaintiff—her first and third. Her first prayer declared her right to recover against both defendants in case the jury should find the facts therein submitted. Her third prayer related to the measure of damage. The first and second prayers of the Mayor and City Council asked to withdraw the case, as to it, from the jury upon the ground that under the pleadings there was no legally sufficient evidence to entitle the plaintiff to recover against the City. The Court refused these prayers.

For the reasons and upon the principle stated in the *Kane case, supra,* the City is not liable to the plaintiff for the injuries sued for. There was, therefore, error in granting the plaintiff's first prayer, and in refusing the City's first and second prayers, and inasmuch as there could be, under the facts, no recovery against the City, its third, fourth, fifth and sixth prayers should have been granted. Upon the principles announced in the *Kane case* the Baltimore and Ohio Railroad Company is liable for such consequential damages as may have resulted to the plaintiff's property from the construction of the approaches and bridge. It follows that there was no error in refusing the first and second prayers of the Railroad Company which asked the Court to direct a verdict in its favor because of a failure of legally sufficient evidence to support the action against it.

The measure of damage, which is the most important question in the case, is raised under the plaintiff's third prayer, the Baltimore and Ohio Railroad Company's third prayer and the City's eighth prayer. That question will now be considered. The plaintiff's third prayer is here transcribed:

"The plaintiff prays the Court to instruct the jury, that if they shall find in favor of the plaintiff, then in considering the amount of damages to be allowed, they may take into consideration the condition and fair market value of

the property in question before the location and construction
of the approach, walls and abutment mentioned in evidence
and the condition and fair market value of the property in
question since the erection and construction of said approach,
walls and abutment, so far as said fair market value has
been affected by said approach, walls and abutment, *together
with such loss of rent from said property, if any, occasioned
to the plaintiff by virtue of said approach, walls and abut-
ment,* and allow to the plaintiff such a sum as they may
believe the plaintiff has suffered naturally and necessarily
resulting from the approach, walls and abutment mentioned
in evidence, except such damages, if any, as the plaintiff could
have prevented by reasonable expense and trouble to avoid
the same, and excepting also all damage which they may find
to have been caused to said property in common with the
general public by virtue of said approach, walls and abut-
ment."

The record shows that counsel for the plaintiff in his argu-
ment before the jury read the granted prayers and said:
"You are to consider the fair market value of this property
before the construction of the bridge and the fair market
value of the property since the construction of the bridge, and
the difference in these values is one element of the damage
for which the plaintiff is entitled to recover under the instruc-
tions, that this is the first element for the jury to consider;
the second element being what loss of rent, if any, the plain-
tiff has sustained by reason of the construction of the bridge.
* * * The second element of damage is what loss of rent, if
any, has she sustained by virtue of the construction of that
bridge. The evidence shows that she got $18.00 a month
rent before and now she gets $13.00. That makes a loss of
$5.00 of course. * * * So she is entitled first to recover the
difference in value of the property, and, secondly, the loss
of rent, to wit: $5.00 a month. I think this loss of rent
began after the bridge was completed, and not when the
bridge was started, which would be in August, 1911. That
would be about two years and a half at $5.00 a month, which

would be $150.00, which she has lost.  She is entitled to recover that, we submit."

In arriving at the difference in the market value of the property before and after the construction, the witnesses for the plaintiff used the rental value before and after the injury in fixing the depreciated value of the property.  By this method, the rental or usable value of the property, as affected by the construction, was allowed for in estimating and fixing its depreciated market value.  Having once allowed for the depreciated rental value, it is manifest that an additional allowance for loss of rent would be in effect a double assessment of damages.  In case of permanent injury to property, either leasehold or fee, we do not know of a case in this State where such a measure of damage as that laid down in this prayer has been announced, and it is not in accord with the rule which has been established by the decisions of this Court.  Apart from those cases in which punitive damages may be allowed, the compensation for injuries to all classes of property should be precisely commensurate with the injury done.  It should be neither more nor less, and this whether it be for injuries to the person or property.  The measure of that compensation in a case of permanent injury, such as we have in this case, is the depreciation in the value of the property occasioned by the acts of the defendant, and when that depreciation has been ascertained by using the rental value as a basis it represents the whole damages to which the plaintiff is entitled, and it would be manifestly unjust to super-add the loss of rent as an independent and additional element of damage, as was done by the plaintiff's third prayer.  This rule, of course, would not apply in cases of temporary injuries and it is possible that cases of permanent injuries might arise where rent as such might be recovered, but there is nothing in this case to take it out of the general rule.

Counsel for the appellee rely in support of the prayer upon the cases of *Lake Roland Company* v. *Webster,* 81 Md. 529, and *Birch* v. *Lake Roland Company,* 83 Md. 362, and assert

in their brief that they "are conclusive of the proposition that the recovery includes the difference in the market value of the property, together with the loss in the rental or usable value of such property to the date of such trial." But this is an evident misapprehension of the decisions in those cases. In the *Webster case* the plaintiff's granted prayer on damages was as follows:

"The plaintiff, by his counsel, prays the Court to instruct the jury, that if they shall.find from the evidence that the rental value of the premises known as Nos. 206 and 208 North street, and occupied by the plaintiff as tenant of William H. Birch under the written lease offered in evidence, has been diminished by the construction and use of the ele- -vated railway of the defendant corporation on North street, then the plaintiff is entitled to recover, and the measure of damages in the amount which the jury shall find said rental value has been so diminished."

That the Court did not understand the prayer to mean what the plaintiff's counsel insist it did mean, and that the Court did not decide what they insist it did decide is perfectly clear from the language of JUDGE BRYAN, who wrote the opinion in that case. "The plaintiff's prayer," he said, "claims damages for the diminution of the rental value of his leasehold property. His testimony was that before the building of the road the annual value of the property was twelve hundred dollars, and the construction and use of the road reduced this value so much, that it was worth nothing. His landlord remitted three hundred dollars of the rent, leaving him still bound to pay nine hundred dollars a year. If the jury found that the usable value of the property was destroyed or diminished by the cause alleged, they were justified in finding a verdict for the damage done. Great exception is taken to the language of the prayer. But it seems to us that its fair meaning is that the jury are to find the damages which the plaintiff sustained as tenant of the premises by the diminution of its rental value. It could not easily be construed as meaning that they were to find the damages

which the landlord had suffered. It is not questioned that the draughtsman of the prayer might have presented the question of damages in a different manner, as was done in *Rice's case,* 73 Md. 307. He has chosen, however, to ask compensation for the diminution of the usable value of his premises. This was certainly an injury to him and he certainly ought to recover for it." In *Rice's case,* which was referred to and approved, the Court said, in discussing the prayers on the measure of damages: "In the first prayer of the City the Court instructed the jury that they could award him only the fair market value of his interest in the brick yard, less the fair market value of his interest in so much thereof as would remain after the opening of Clare street This seems to cover the whole question. The prayer granted in behalf of Rice presents the same theory of the law in a different form."

The *Birch case* was, as stated by the Court in its opinion, "in almost every material respect," identical with the decision in the *Webster case,* and the rule of damage laid down in that case was followed. In the Birch case the Court quoted from the opinion of CHIEF JUDGE McSHERRY in *C. & P. Tel. Co. v. Mackenzie,* 74 Md. 50, that "where the land of the plaintiff is not taken nor his soil actually invaded, the measure of damages as adjudged in many cases, is either first, the extent to which the rental or usable value of the particular property has been diminished by the trespass or injury complained of. *Baltimore and Ohio Railroad Company* v. *Boyd et al.,* 67 Md. 41; *Wood, etc.,* v. *State, use of White,* 66 Md. 61; or, secondly, the difference in the value of the property before the construction of the pole, and its value afterwards, if the depreciation in value has been caused by the erection and maintenance of the pole."

It is clear that neither in the *Webster case,* nor the *Birch case,* did the Court decide that in addition to the diminution of the rental or usable value of the property there could be a recovery for loss of rent. Had the italicized portion of the prayer been omitted, it would have announced the true meas-

ure of damage applicable to the case. It follows that the third prayer of the Baltimore and Ohio Railroad Company, which was on the subject of damages, should have been granted. The eighth prayer of the City ignored the duty of the plaintiff to minimize the damages and it does not exclude such damages as she might have suffered in common with the general public, and it was properly refused.

The record contains two exceptions taken by the defendants to the refusal of the Court to strike out the testimony of William E. Ferguson as to the value of the plaintiff's property after the construction of the bridge. The grounds of the motions were that in arriving at the value of the property after the work was completed the witness used the tax bills for the year 1914, and the assessment for 1913. The bridge was finished in August, 1911, and it was undoubtedly improper for the purpose of ascertaining the expenses on the property with a view of fixing its value after the injury to have used the assessment and tax bills for years so remote from the date of the injury. While this was improper, and may be avoided in the retrial of the case, we would not, in view of the whole testimony of the witness, reverse the case for these reasons. What we have said, we think, is sufficient to indicate our opinion on all the questions presented by the record.

> *Judgment reversed, and new trial awarded; the appellee to pay the costs above and below.*