THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* FREDERICK RICE.

*Eminent domain—Leasehold interest—Compensation—Measure of Damages.*

A leasehold interest of large market value, cannot be taken for public use without due compensation to the lessee.

Where such leasehold interest is injured by ·the opening of a street through the leased land, the measure of damages is the difference between the fair market value of such interest before and after the opening of the street.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—The appellant below offered the following prayer:

That if the jury find from the evidence that the appellant is the tenant from year to year of the land described in the proceedings in this case, and that the lease

of the land has been renewed from year to year, for a period of five years, and that the appellant erected valuable improvements upon the land, relying upon a renewal of said lease, and that it was the intention of the appellant and the landlord of the premises to renew said lease, then the jury in estimating the damages sustained by the appellant may take into consideration the additional marketable value, if any, imparted to the appellant's interest by reason of the probability of the renewal of the said tenancy; provided the jury make proper allowance for the precarious nature of such expectancy and its liability to be destroyed at the termination of the year on three months' notice to quit.

The City offered the following prayers:

1. That in estimating the damages to be awarded to Mr. Rice, the jury cannot consider either the good will of his business or his prospective profits thereupon, or any inconvenience or loss arising from the interruption of his business, and can only award him the fair market value of his interest in the brick-yard in question, less the fair market value of his interest in so much thereof as will remain after the opening of Clare street.

2. In ascertaining the interest of Mr. Rice in the said brick-yard, the jury are confined to the term for which he holds the same under his contract of rental, and cannot consider the possibility or probability of his term being renewed, because there is no sufficient evidence of any contract or agreement on the part of the owner or owners of said property, or their agents, for such renewal.

3. In ascertaining the interest of Mr. Rice in the said brick-yard, the jury cannot consider the possibility or probability of his terms being renewed from time to time, unless they find that there existed some positive contract or agreement on the part of the landlords, or their agents, for such renewal.

4. The City asks the Court to exclude from the consideration of the jury all evidence tending to show any custom by the Carrolls, or their agents, to renew the rental of their brick-yard properties, from time to time, in the absence of any agreement thereupon.

5. There is no sufficient evidence of any custom on the part of the Carrolls to renew the leases of their brick-yard properties, sufficient to bind them to renew the lease to Mr. Rice, and he must thereupon, according to his own evidence, be considered simply as a tenant from year to year.

6. If the jury find from the evidence that Mr. Rice was a yearly tenant of the brick-yard in question, and that more than ninety days prior to the end of his year, he received from the agents of the owners a notice in writing to quit the premises at the end of his year, to wit, December 31, 1888; and shall further find, that after the receipt of such notice he agreed with Mr. Mackall and Mr. McAvoy, the agents of the owners, to rent the premises for one year beginning January 1, 1889, and ending December 31, 1889, without any agreement for renewal; and shall further find, that more than ninety days before December 31, 1889, he received a notice in writing to quit at the end of the year, and that he thereafter agreed with said Mackall and said McAvoy, the agents of the owners, to rent the premises for the year beginning January 1, 1890, and ending December 31, 1890, without any agreement for renewal, then the jury cannot allow him damages for any injury based on his possession, or probability of possession of said premises after December 31st, 1890.

7. The City asks the Court to exclude from the consideration of the jury the evidence of the witness Mackall on cross-examination, that he would be willing to give a renewal of the lease if nothing happened, &c.

The City excepted specially to the appellant's prayer, because there is no evidence legally sufficient to show

that the landlord and the tenant both intended to renew the lease to Rice.

The Court (PHELPS, J.,) granted the prayer of the appellant as modified by the proviso, and the first, fourth and fifth prayers of the city, and rejected its second, third, sixth and seventh prayers, and overruled its special exception, and the verdict being against it, this appeal was taken.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Albert Ritchie, City Counsellor,* for the appellant.

*Isidor Rayner,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

In the return of their proceedings relative to the opening of Clare street in the City of Baltimore, the Commissioners awarded certain damages to Frederick Rice. He took an appeal to the Baltimore City Court, and the jury in their inquisition assessed his damages at thirty-five hundred dollars. The Mayor and City Council of Baltimore appealed to this Court from the rulings of the City Court. Rice testified that he was the owner of a brick-yard, which would be destroyed for all practical purposes by the opening of Clare street; that the yard was worth four thousand dollars, and that after the street should go through it it would be worth nothing. The fee in the land belonged to the Carroll heirs, and Rice had been their tenant since 1885. The agent of the Carroll heirs gave him notice to quit on December 31st, 1888; and made a new contract for the year 1889; he also gave him notice to quit on December 31st, 1889, and made another contract of renting for the year 1890,

at a different royalty. The agent testified that it was his intention to renew the tenancy, if the street had not been opened, and that he would have continued to renew it, as he had no trouble with Rice, and that he had no intention to remove him; that the Carrolls derived large revenues from these yards, and were perfectly satisfied to let the tenants remain as long as they had no trouble about the royalties paid by them; that a number of them had erected expensive improvements under their leases, and that he had no doubt that the expectation of a renewal adds largely to the marketable value of their interests; that these yards have been used in this way for half a century. There was other evidence that leases like Rice's had a marketable value, and that his interest in his brick-yard was worth four thousand dollars, and that large amounts of money had been invested by the holders of these yards on the Carroll property under leases similar to Rice's, and that no tenant had ever been removed so long as he continued to pay his rent.

In this State no man's property can be taken for public use before he is paid the value of it. The evidence tended to show that Rice's brick-yard, though held by a precarious tenure, had a large market value. A thing is worth what it can be sold for. If Rice's interest would sell for four thousand dollars, it was worth four thousand dollars, and the destruction of it would injure him to that extent. It would be confiscation, pure and simple, to take it from him, without paying him its value. It is not a question of the permanency of his title to real estate, but of the salable value of such interest as he had. In the first prayer of the City the Court instructed the jury that they could award him only the fair market value of his interest in the brick-yard, less the fair market value of his interest in so much thereof as would remain after the opening of Clare street. This

seems to cover the whole question.   The prayer granted
in behalf of Rice presents the same theory of the law in
a different form.   It, however, is not in all respects
technically accurate in describing Rice's interest as a
tenancy from year to year.   The jury had a right to
consider the probability of a renewal of Rice's term,
because the evidence tended to show that this circum-
stance increased its market value.   The rejected prayers
offered by the City are in conflict with the views which
we have expressed and were properly refused.

*Rulings affirmed.*

(Decided 16th January, 1891.)