# THE MAYOR AND CITY COUNCIL OF BALTIMORE AND THE COMMISSIONERS FOR OPENING STREETS

*vs.*

# GAMSE AND BROTHER.

*Condemnation proceedings: reversionary interests; leasehold interests; allowance to tenants; question of improvements by tenants; removal of machinery.*

In proceedings to condemn reversionary interests, as well as leasehold interests, the rule is to ascertain the entire compensation to be allowed, as though the entire title or estate in the property belonged to one person, and then apportion the sum among the holders of the different interests, according to their respective rights.                                    p. 293

The tenant should be allowed the market value of his estate; where it is not shown that at the termination of the lease he is to be paid or allowed for permanent improvements made by him, such improvements should not be allowed for in the condemnation.                                    p. 295

In such cases the amount of compensation to which the tenant is entitled is the difference between the fair value of the use and occupation of the leased premises for the unexpired term and the rent which he would have had to pay for the remainder of the term.                                    pp. 297-298

In such cases, a tenant should not be allowed for the labor and expense of dismantling, removing and reassembling his machinery and appliances in another place, when he is required by the condemnation to quit the leased premises.                                    p. 296

*Decided April 12th, 1918.*

The facts are stated in the opinion of the Court.

Appeal from the Baltimore City Court.   (BOND, J.)

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. S. Field, the City Solicitor,* and *Benjamin H. McKindless, Assistant City Solicitor,* for the appellant.

*Edgar Allan Poe* (with whom was *James Fluegel* on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

This is a proceeding by the Mayor and City Council of Baltimore to condemn, under the right of eminent domain, the leasehold interest of the appellees in a lot of land and the improvements thereon, situated on the northwest corner of Saratoga and Courtland Streets, and occupied by them in the conduct of their business of lithographing and printing.

The said lot of land which fronts fifty feet on Saratoga Street, with a depth of one hundred feet on Courtland Street, is improved by a brick building of three stories and a basement.   The premises were first leased unto the appellees, Herman Gamse and Benno E. Gamse, trading as H. Gamse and Brother, by the Owners Realty Company, by deed of lease dated the ninth day of December, 1910, for the term of five years, commencing on the 1st day of April, 1911, and ending on the 31st day of March, 1916, at and for the annual rental of three thousand dollars.

The said lease contained the following provisions:

> "That at the expiration of the lease and upon a previous notice of six months by H. Gamse & Brother, this lease shall continue in force for another period of five years, subject to the same conditions as herein set forth, but subject to an increased rental of thirty-three hundred dollars per annum."

Before the expiration of the lease it was agreed by the parties thereto that upon a renewal of it the lessors should make certain improvements upon the leased property, for which the lessees were to pay to the lessors, as rent, the sum of two hundred and ten dollars per year, in addition to the said rental of thirty-three hundred dollars provided for by the original lease, making a total rental therefor of three thousand five hundred and ten dollars; and on the 27th day of March, 1916, a renewal lease was executed by the parties, in conformity with the agreement so made, for the term of five years, commencing on the 1st day of April, 1916, and ending on the 31st day of March, 1921. This lease contained no provision for its renewal.

It was to condemn the leasehold interest of the appellees in said property that these proceedings were instituted.

The Commissioners for Opening Streets awarded to the appellees one thousand dollars compensation therefor, and the appellees, being dissatisfied with said award, appealed therefrom to the Baltimore City Court, where a trial by jury was had, which resulted in an award of nine thousand two hundred and fifty dollars to the appellees, as compensation for the taking of their leasehold estate. From that award the City has appealed to this Court.

At the conclusion of the evidence both the City and the appellees asked for instructions to the jury as to the measure of damages applicable to the facts before them.

The appellees' first and third prayers were refused and its second was granted as modified.

The appellant's first, fourth, fifth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth prayers were refused. Its second was granted and its fourth A and sixth prayers granted as modified.

In addition to the prayers granted, the Court granted an instruction of its own.

The City, prior to the institution of these proceedings, had acquired the reversionary interest of The Owners Realty

Company in said property by a conveyance from it, and, as we have said, the controversy here relates only to the amount the appellees are entitled to be paid for their leasehold interest, taken from them under these proceedings.

The appellees, as owners of the leasehold, and the City, as owner of the reversion, acquired from the Owners Realty Company, together held the fee simple estate, and the sum of the values of these interests is the value of the property taken. *Gluck* v. *M. & C. C. of Baltimore,* 81 Md. 321. The value of the property is not enhanced by the fact that the entire title or estate in the property is not held by one and the same party. *Lewis on Eminent Domain* (3rd Edition), Section 716.

In proceedings instituted to condemn the reversionary interest, as well as the leasehold interest, the rule is to ascertain the entire compensation to be allowed as though the entire title or estate in the property belong to one person, and then apportion the sum between the holders of the different interests, according to their respective rights; *Baltimore City* v. *Latrobe,* 101 Md. 629. As was said by this Court, speaking through CHIEF JUDGE BOYD, in the case last cited, "the condemning party, as a rule, ought not to be required to pay for the two interests more than the portion taken would be worth if owned by one person. * * * The jury or other tribunal authorized to make the award, should always keep the value of the entire property in mind, and should limit the whole amount to be paid to that value, unless it is clearly shown that the lessee is entitled to more than the difference between what they allowed the reversioner and what the whole property would be worth in the market if there had been no ground rent."

When the entire property included in a lease is taken the question is one of comparatively easy solution, although there may be, as in this case, two separate estates therein, held by different parties. In such case the rule stated above may ordinarily be applied without difficulty.

By the weight of authority, the rule, as to the measure-
ment of compensation in cases like the one before us, is,
generally speaking, precisely the same, whether the assess-
ment of damages be to the tenant in fee, for life, or for
years. The tenant should be allowed the market value of
his estate. See note to *Baltimore* v. *Latrobe,* Vol. 4, *A. & E.
Annotated Cases,* 1005.

In *Baltimore City* v. *Latrobe, supra,* JUDGE BOYD said
"the reversioner is undoubtedly entitled to what this interest
is worth in the market and *prima facie* the leasehold is
charged with that value." *Gluck* v. *Baltimore City, supra.*

In *Baltimore City* v. *Rice,* 73 Md. 307, the City was
granted a prayer, by which the jury were instructed that
they could award the owner of the leasehold estate "only
the fair *market value* of his interest in the *brick-yard,* less
the fair *market value* of his . interest in so much thereof as
would remain after the opening of Clare Street." This
Court held that prayer good, and said of it, that it covered
the whole question. It would thus seem that, in this state
at least, the measurement of compensation for the appropria-
tion of an estate, in cases of this character, is ordinarily the
market value of the estate.

The Court's prayer instructed the jury "that they are to
estimate and allow to the lessees the value of the right to
continue in undisturbed possession of the premises for the
remainder of the term fixed in the lease now existing, and
that this value so to be estimated is represented by the price
at which a lessee in the situation of the present lessees will-
ing but not compelled to sell would sell the right, and a
buyer, if there should be any such, willing but not compelled
to buy, would pay for the right; that in arriving at their
estimate the jury should consider the extent to which the
building has been specially equipped and adapted for the
lessees and the labor and expense of dismantling, removing
and reassembling the machinery and appliances in another
place at this time; not that the jury shall award to the

lessees the items of expense of equipment and adaptation of the building and of moving the plant, but they shall bear such items in mind as possible factors, which might play some part in the value and selling price mentioned above in this instruction."

It is contended by the appellant that this prayer incorrectly states the law applicable to the facts and circumstances of this case as disclosed by the Record, and should not have been granted.

The building and improvements upon the leased premises were constructed for the appellees by The Owners Realty Company, with special regard for the adaptability of the same to the purposes for which the premises were to be used by the appellees; and the lessees, at their own expense, made other improvements for the better adaptation and equipment of the premises for the use for which they were intended.

The terms and conditions, if any, upon which the improvements were made by the appellees do not appear in the Record. It is not shown that there was any agreement between the lessor and the lessee by which the latter were to be paid therefor, or that such improvements were to be property of the lessees to be removed by them at the expiration of the lease. The substantial or permanent character of some of the improvements made by the appellees indicates that they were not to be removed by them at the end of their tenancy, for they could not be removed without injury to the building. It may be that some of the improvements are of such a character as to entitle the lessees to remove the same at the end of their tenancy without any agreement to that effect, if so, they are still entitled to remove them when they are required to quit the premises because of these proceedings. The City does not under such proceedings take the personal property of the tenants, but only their rights in the leasehold.

The appellees, as we have said, have not shown that they were to be paid for the permanent improvements made by

them or that such improvements were to be their property at the expiration of their tenancy, and, therefore, to allow them for said improvements, which they have not shown they are entitled to, might result in paying them for something to which they have no claim or right.

Upon the facts of this case, as found in the Record, the improvements made by the tenant upon the leased premises are only to be considered in ascertaining the extent to which the value of the use and occupation of the premises was enhanced or increased by reason of such improvements.

In cases where it is shown that the value of the use and occupation of the leased premises has been increased by the improvements placed thereon by the lessee, proportionate to the amount expended therefor, the costs of such improvements may be submitted to the jury as an element of proof in arriving at the value of the use and occupation of the property after such improvements are made.

As the appellees placed improvements upon the leased premises, in addition to those placed thereon by The Owners Realty Company, they are entitled to show, by proper evidence, of what the improvements consist and the extent to which the value of the use and occupation of the premises is increased thereby, in ascertaining the value of their leasehold interest in the property.

This prayer is faulty, in our opinion, in that it instructs the jury that in arriving at their estimate of the value of the lessees' right to continue in possession of the leased premises they should consider *the labor and expense of dismantling, removing and reassembling the machinery and appliances in another place* at the time they are required under these proceedings to quit the leased premises.

If the tenants were to remain upon the premises for the full length of their term, the cost, labor and expense of dismantling, removing and reassembling the machinery and appliances in another place would fall upon them, or at least this is true so far as the record discloses; and the fact that

they must, as a result of these proceedings, remove therefrom at an earlier time, and pay the costs of the same, does not, as shown by the record, impose upon them additional burdens. The effect of condemnation under these proceedings would be to hasten the removal of the appellees and to shorten the term of their tenancy, but not to place upon them any additional burden, in dismantling, removing and reassembling the machinery and appliances in another place in consequence thereof, which they would be required to do at their own expense at the end of their tenancy, if not disturbed by these proceedings.

It is said in *Lewis on Eminent Domain,* Sec. 27, "The business conducted upon the property is not taken (under condemnation proceedings), and the owner can remove it to a new location. Any incidental loss or inconvenience in business which may result from removal must be borne for the sake of the general good in which he participates"; and in the case of *New York, W, S. & B. R. R. Co.,* 35 Hun. 635, the Court, in discussing this question, said: "The circumstances of this case does not present the question of compensation and the expense of removing personal effects from the premises in any different light than it would be if the appellant were the owner of the fee, instead of being tenants for a term of years. The company seeks to acquire a complete title to an entire parcel of land. It should not, in fairness, be compelled to pay more for the land than its market value because the owner of the fee has carved out of it a leasehold estate." *Hunter v. C. & O. R. R.,* 59 S. E. R. 417, and other cases cited in note to *Blincoe* v. *Choctaw, Okla. & Western R. R. Co.,* 4 L. R. A. (N. S.), page 890.

In this case the amount of compensation to which the appellees are entitled, upon the facts before us, is the difference between the fair value of the use and occupation of the leased premises for the unexpired term (if such use and occupation exceeds the amount of rent contracted to be paid by the appellees for said premises for such time), and the rent

which the appellees had contracted to pay for said premises
for the remainder of the term.

The first and fourth prayers of the City are consistent
with the views we have expressed as to the measurement of
the compensation to which the appellees are entitled, and so
was then City's 4A prayer as offered. These prayers should
have been granted.

The City's fifth prayer should have been granted, and the
reason therefor is given in what we have said in holding the
Court's prayer defective.

The modifications of the City's sixth prayer was, we think,
wrongfully made, in that it was thereby made subject to the
finding of the jury under the Court's prayer, which, as we
have said, was defective.

The City's seventh, eighth, ninth and tenth prayers were
all refused, because, as the Court stated, they were likely to
confuse the jury in view of the instructions above referred
to, which we have held to be defective. Upon the evidence
offered these prayers should have been granted.

The eleventh, thirteenth and fourteenth prayers of the City
were properly refused because not qualified in conformity
with the view we have expressed as to the measurement of
compensation. The twelfth prayer should have been granted
for the reasons we have stated in disposing of the Court's
instruction.

The first, second, eleventh and fourteenth exceptions are to
the admission of evidence as to the intentions of the land-
lord and tenant to renew the lease of the property men-
tioned in these proceedings. This testimony was first admit-
ted, but afterwards stricken out, and the petitioner's prayer
based upon this testimony was refused.

The third, fourth, seventh and eighth exceptions are to
the admission of evidence as to the cost of the improvements
to the property placed upon the property by the appellees.
This evidence was inadmissible, as it did not, as offered,

conform to the qualifications heretofore indicated as necessary to render such testimony competent.

The fifth and sixth exceptions refer to the admission of evidence as to the present cost of constructing the leased buildings.

For the purpose of this inquiry as to the value of the lessees' right to the use and occupation of the premises we think such evidence was inadmissible.

The ninth, tenth, twelfth, thirteenth, fifteenth, sixteenth and seventeenth except to the admission of evidence in relation to the cost of dismantling and removing the machinery of the appellees to another location and the rent they would be required to pay at such new location. This evidence should have been excluded for the reason given in disposing of the Court's prayer.

The eighteenth exception was to the refusal of the Court to admit in evidence the deed of The Owners Realty Company conveying to the City of Baltimore its reversionary interest in the leased property. The deed should have been admitted in evidence, as the jury were entitled to know that the interest of The Owners Realty Company in said property had passed from it to the City. The fact that the City had become the owner of such interest in the property by virtue and in pursuance of Ordinance No. 586, approved March 13, 1915, and Ordinance No. 77, approved January 21st, 1916, sets at rest the question of a renewal of the lease by the appellees at the expiration of its term.

It was because of the Court's errors in its rulings above stated that this Court reached the conclusion announced in the *per curiam* opinion heretofore filed.

*Rulings reversed and new trial awarded, with costs to the appellants.*