CHARLES L. PUMPHREY ET AL *v.* STATE ROADS COMMISSION.

[No. 62, October Term, 1938.]

500

*Decided December 1st, 1938.*

502

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter V. Harrison* and *R. Tilghman Brice, III*, for the appellants.

*George W. Haley*, with whom were *Herbert R. O'Conor, Attorney General, Thomas M. Jenifer, Special Assistant Attorney General, William J. McWilliams*, and *McWilliams & Duckett*, on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This is the landowner's appeal from a judgment of the Circuit Court for Anne Arundel County, entered in a condemnation proceeding instituted by the State Roads Commission of Maryland, in which he was awarded $300 for the appropriation of .19 acres of land located at the intersection of the Annapolis Boulevard and the Jumper Hole Road near Lipin's Corner, in Anne Arundel County.

The trial of the case was concluded on July 6th, 1938, the appeal taken on July 13th, 1938, and the bill of exceptions filed on July 19th, 1938. The April Term of the Circuit Court for Anne Arundel County expired on July 18th, 1938, and by Rule 29 of the Law Rules of that court all exceptions noted during the trial of a case in that court must "unless otherwise expressly allowed by the court" be prepared and submitted to the court during the term at which the trial occurred.

Upon the docketing of the case in this court, the appellee moved to dismiss the appeal on the ground that the bills of exception were not signed during the term

at which they were noted, that, under the rules of the Circuit Court for Anne Arundel County, they could not validly be signed after the expiration of that term unless the time for signing them had been expressly extended, and that there had been no extension.

In other words it contends that the appellate procedure is governed by the common law and the Law Rules of that court. But that is not the case. Code, art. 33A, sec. 12, prescribing the procedure for an appeal to this court from any judgment entered in a condemnation case tried under the provisions of that article, provides that "any such appeal shall be entered in writing within ten days from the date of said judgment, and all bills of exceptions desired by such appealing party shall be prepared and presented to the Court to be signed, on or before the expiration of twenty days from the date of said judgment, unless such time for settling and signing said bill of exceptions shall for good cause be extended by the Court, but the record of such case and appeal in any event shall be filed with the Clerk of the Court of Appeals of Maryland, within thirty days from the date of the entry of such appeal."

In view of these explicit and mandatory directions, it is manifest that Rule 29 of the Law Rules of the Circuit Court for Anne Arundel County has no application to an appeal taken under the provisions of Code, art. 33A. The power of that court to try a case under the provisions of that act was not a part of its general jurisdiction as a common law court, but a special statutory jurisdiction, and unless expressly granted by the Legislature, no appeal from its judgment therein to this court would lie. Since the Legislature had the power to grant or withhold the right, if it granted it, it necessarily had the power to prescribe the manner in which it should be exercised. It has done that in unmistakable terms, and since the appeal was taken and the exceptions signed in conformity with the provisions of the statute, the motion to dismiss is overruled.

In reaching that conclusion the court is not unmindful

of the fact that the record fails to show that any judgment was entered on the verdict, but since the appeal is from "the judgment rendered in the above entitled case", in the absence of a motion to dismiss on that ground, it will be assumed that the judgment was entered prior to the appeal. It is settled that no appeal lies from a verdict in cases where a judgment on the verdict is necessary to a final disposition of the case, 4 *C. J. S., Admiralty*, p. 331, sec. 193; 3 *C. J.* 600, note 35. Code, art. 33A, sec. 11, directs that if in cases tried under its provisions, there shall in any case be a verdict for the petitioner which becomes final, the court shall "forthwith" enter a judgment in favor of each defendant for the compensation awarded and costs. Unless therefore there was a judgment when the appeal was taken it was premature. But the entry of the judgment was a mere ministerial act, it does not appear that any motion or other proceedings was taken to stay its entry, and it was the clear duty of the court under those circumstances to enter it. And in the absence of any showing or suggestion to the contrary, it will be assumed that it performed that duty. *Kendall Lumber Co. v. State*, 132 Md. 93, 100, 103 A. 141; *Sweeney v. Hagerstown Trust Co.*, 144 Md. 612, 622, 125 A. 522.

The only exceptions submitted relate to rulings on evidence, but before dealing with them *seriatim*, some reference may be made to the nature of the case, as shown by the undisputed facts, and to the precise issue which the jury were required to decide.

The purpose of the proceeding was to acquire title to two lots of ground owned by appellant, needed by the appellee for the improvement of a state road from the New Annapolis Boulevard to Lipin's Corner in Anne Arundel County. Appellants own lot No. 1 in fee, and they own the reversion of Lot No. 2, which is occupied by the old Annapolis Boulevard. Both lots are contiguous, are on the southwest corner of the Old Annapolis Boulevard and the Elvaton or Jumper Hole Road, and are part of a larger tract containing about one acre of land.

The larger lot is improved by a small building which

appellant uses as a real estate office, and a frame garage. The office building is about sixteen feet from the paved part of the present state road on which it fronts. Between a point back of that building and the Jumper Hole Road there is an advertising sign board which also faces the Annapolis or Mountain Road. Running from the front of the side of the building nearest the Jumper Hole Road in the direction of that road is a paling fence. The space between that fence and the Boulevard is graded and is used for parking automobiles. The effect of the taking will be to bring the highway nearer to the office building, and also to the sign, to change in some degree the relation of the road to the lot and to lower the grade of the road, so that it will be about one foot lower than the present grade of that part of the lot which will abut on the improved road. Back of the paling fence the ground slopes downward in a westerly direction. The appellant contends that the taking will require him to move his office farther back, to resod and regrade his parking space, and to relocate the sign board.

The appellee denies that the taking will adversely affect that part of the lot not taken, that the only damages appellant is entitled to recover are the fair market value of the part taken and the expense of making minor changes in the contour of the remaining land, to restore it to the same relative situation in respect to the new road that it has to the present road.

The right of the State to acquire the land for road purposes was not seriously questioned, so that the only issue in the case was the amount of compensation which the landowner should receive for the loss which he will sustain as a result of the taking.

The measure of that loss is the value of the land taken, and since the land taken is part of a larger tract, the diminution in value of the larger tract, if any there be, caused by the taking of the particular segment thereof. Ordinarily that measure is ascertained by comparing the fair market value of the whole lot before the taking with the fair market value thereof after the

taking, excluding from consideration any enhancement in value resulting from the utilization of the land taken for the purpose for which it was taken. In determining the fair market value of the land, consideration may be given to any utility to which it is adapted and for which it is immediately available. Market value is defined as the price which an owner willing but not obliged to sell would accept for the property and which a buyer willing but not obliged to buy would pay therefor. 20 *C. J.* 727; 10 *R. C. L.* 128, 153; *Realty Imp. Co. v. Consolidated Gas etc. Co.*, 156 Md. 581, 587, 144 A. 710; *Baltimore City v. Garrett*, 120 Md. 608, 87 A. 1057; *Baltimore City v. Megary*, 122 Md. 20, 89 A. 331; *Patterson v. Mayor and City Council*, 124 Md. 153, 160, 91 A. 966; *Brack v. Mayor and City Council*, 125 Md. 378, 93 A. 994; *Brack v. Mayor and City Council*, 128 Md. 430, 97 A. 548; *Consolidated Gas Co. v. Mayor and City Council*, 130 Md. 20, 99 A. 968; *Patterson v. Mayor and City Council*, 130 Md. 645, 101 A. 589.

Where, as in this case, the size and shape of the land taken preclude the theory that it has any market value, the owner is entitled to be awarded its actual value, and in such a case, where the part so taken is a segment of a larger tract, the fairest and indeed the only method of determining the compensation to be awarded the landowner is to compare the fair market value of the whole tract before the taking with the fair market value of the part remaining after the taking, allowing to the owner, however, in any event, as an irreducible minimum, the value of the part taken. *Realty Improvement Co. v. Consolidated Gas etc. Co.*, 156 Md. 581, 588, 144 A. 710.

In any such an inquiry the purposes for which the land may be utilized, and for which it is available, its condition, and the improvements thereon, and the effect of the proposed use of the part taken on the value of the remainder, are relevant facts to be weighed and considered.

Turning now to the exceptions, J. Kearsley Kearney was offered by the appellee as an expert on real estate

values in Anne Arundel County. Mr. Kearney is engaged in the real estate business in Baltimore City, and deals with suburban property in Anne Arundel and other counties "around Baltimore City," and professed to be familiar with values in the vicinity of the Pumphrey property, and stated that his knowledge was derived from sales of suburban property made in the neighborhood. After so testifying, he was asked what would be the fair market value of lot No. 1, described in the petition in this case. Appellant then asked the privilege of testing by cross-examination the witness' qualifications to answer the question. He was asked a question which was irrelevant in itself, but, after a long colloquy between court and counsel, the court said: "Now, here is a witness who has been put on by the State. He has shown knowledge of values in that section, and he has testified as a real estate expert in this court a good many times, and I suppose, in the Baltimore courts also. So, the court will now rule on the qualifications, if that is the ground of your objection." The effect of that ruling was to prevent further cross-examination of the witness. The witness was then permitted to give his opinion of the value of the land taken as well as of the damages to the remainder. These rulings are the subject of exceptions one, two, and three. There was error in these rulings. The opinion of an expert witness on his own qualifications is in no sense conclusive. *Jones on Evidence,* sec. 369. Whether such a witness possesses the requisite qualifications is a preliminary question for the court, and while not a matter of right, cross-examination is ordinarily allowed as an aid to the court in deciding the question, *Ibid;* 22 *C. J.* 524. But where there is an objection to the qualification of the witness, his competence should be tested either by cross-examination, or by examination by the court (*Ibid.*), and while we are not willing to reverse the judgment because of these rulings (*Ibid.*), the practice of excluding any legitimate inquiry into the source of the knowledge which an expert witness professes, as the basis of his ability to express an opinion, before he is per-

mitted to state an opinion, should not be encouraged. The same witness was asked in his regular cross-examination whether he knew "what Mr. Fuss is asking per foot for his frontage there." An objection to the question, which is the subject of the fourth exception, was properly sustained. Obviously the value of the property to be taken could not be fixed by what some other landowner asked for his property.

In his brief appellant denies the competency of the witness to express an opinion as to the damages sustained by the landowner as a result of the taking, because it developed from his regular cross-examination that he had no direct knowledge of the property taken, or of the sales of other properties in the neighborhood. But those facts were brought out on the regular cross-examination of the witness after he had given the opinion, and there was no motion to strike out his opinion evidence at that or any other stage of the case, so that objection is not before this court.

Charles F. Lee, a real estate agent operating in Annapolis and Anne Arundel County, testified that the value of the whole lot was in his opinion $2,000, and it would not be worth any less after the taking. He then on cross-examination modified that statement and valued the part taken at $200. He was then asked: "Now, to have the same place for parking automobiles in front of his office, as he does now, how far would he have to move his office"? The refusal of the court to allow the question is the basis of the fifth exception. The witness having testified to the value of the property, it was relevant to inquire into this knowledge of the elements which made up that value. If the taking affected the utility of improvements on the remainder of the lot, it necessarily affected the value thereof. Adequate parking space adjacent to the owner's real estate office for use by his clients may well have added to its convenience and utility, and the question should have been allowed.

The sixth exception involves the refusal of the court to permit the same witness to be asked whether taking

the land described in the petition would not take one half of the frontage of the remainder on the Annapolis Boulevard. The question was fairly designed to test the witness' knowledge of the property, and the effect of the taking, and should have been allowed for that purpose. But as the information sought appeared on a plat filed in the case by the appellant, the error was not reversible.

The seventh and eighth exceptions involve these rulings. The same witness was asked to give the rental value of the sign board on the property. The court sustained an objection to the question and then made this statement, to which appellant noted his seventh exception: "The value of the tract is not the measure of damages. It is the value of the piece of tract that is being taken. Now, a sign that happens to be back of the area that is to be taken, what the owner gets or does not get from that sign, could not be any measure of value of the piece sought to be taken." That statement, presumed to have been made in the presence of the jury was both erroneous and injurious. Undoubtedly the value of the tract was an essential fact to be considered in determining the measure of appellant's damages. For only by comparing the market value of the whole tract before the taking with its value thereafter could the effect of the taking on the value of the remainder be known. Moreover, the rental value of the property or of any part thereof for any lawful purpose reflected some light on the market value of the whole tract. 20 *C. J.* 790.

Lipin's corner is on the Annapolis Boulevard about an eighth or a quarter of a mile from appellant's land. Appellant was asked whether he was familiar with the price Mr. Lipin paid for it. An objection to that question was properly sustained, because it did not appear, and there was no offer to show, when the sale was made, nor could the ruling, which is the subject of the ninth exception, have injured appellant, because he later said that he knew of no sale of any corner property within five miles of his property within five years.

The tenth exception relates to the action of the court in

overruling the following offer of proof: "That the defendants are receiving as rent for allowing an Arrow Beer sign to remain on the lot of the defendants, and not on the land taken in these proceedings, the sum of $150 per year. We offer this evidence for the purpose of tending to rebut the evidence offered by the real estate experts produced by the State Roads Commission as to the value of the entire lot as it now stands." The rental value of land has some relation to its market value. In fixing its market value, sales of the land itself and of other land in its vicinity, made within a reasonable time, if voluntary, are admissible in evidence as reflecting upon the market value of the land condemned (*Mayor and City Council of Baltimore v. Smith*, 80 Md. 458, 473, 31 A. 423), for, as stated in the opinion in that case "We all know, from observation, if not from experience, that if inquiry is made as to the value of a lot on a certain street in a city or town, where other sales have been recently made, it is generally answered by naming the prices realized at such sales. If twelve jurors are taken upon land to ascertain its value, with which they are unacquainted, the first question that is suggested to them is, 'What does land in this neighborhood sell for?'" There are cases in which it is held that direct evidence of particular sales of other lands is not admissible for that purpose because such sales are collateral to the issue of the market value of the land to be condemned (*Jones on Evidence*, secs. 168, 169), but, as stated in the case last cited, the rule in this state, supported by what is perhaps the weight of authority, (*Jones on Evidence*, sec. 168, notes 92, 93), is otherwise.

If the purchase price of the land is evidence of its value, it would seem that the rent actually received from it or a part of it would also be evidence of its value. The objection to it appears to be based upon the assumption that the taking did not affect the value of the part of the tract not taken. But that question was for the jury and not for the appellee to decide. It may be that the taking will not affect the rental value of so much of the prop-

erty as the sign board occupies, nevertheless the rent or income derived therefrom is some evidence of the value of the whole tract, and that is the purpose for which it was offered. The appellant should have been permitted to offer evidence of the facts stated in his proffer of proof.

Pumphrey, having testified that it was necessary to move the office building to adapt it to the changes incident to the proposed relocation of the road, was asked what effect the change would have on the sign. The court refused to allow the question. He was then asked what it would cost to put his lot "in condition," so that he can use it after the relocation of the road as he now uses it. An objection to that question was also sustained. Appellant then made this proffer: "We offer to prove by this witness and other witnesses, who are qualified contractors, that the cost to Mr. Pumphrey to improve the part of his lot in the rear of the part taken by the State in these proceedings, so that Mr. Pumphrey may maintain a similar arrangement for his office, for the parking of customer's cars, and for a garage, as he enjoys now before the taking, will be $1275. * * * We also offer to prove by this witness that due to the change made in the roadway by the taking it will be necessary to move the real estate office now located on the land owned by the defendants, and that by moving this office building it will obstruct a commercial sign now used by the Morton Advertising Company, so that this commercial sign will have to be moved to another location, to bring in the revenue it now produces for the defendants," which was overruled, and those rulings are the subject of the eleventh, twelfth, thirteenth and fourteenth exceptions.

The measure of damages was the difference between the value of the whole tract before the taking and the fair market value of the remainder after the taking. If the fair value of an ungraded unimproved lot, useful as a building site, is $1,000, and it is necessary to spend $1,000 to grade and improve it before it can be used for that purpose, its market value is not $2,000, but $1,000. For when one buying a lot estimates what will be a fair

price to pay for it, he will naturally inquire, "How much must I spend on it before I can use it?" So much of the whole lot as remained after the taking, with an inadequate parking space, unsodded and ungraded, would naturally have less value than the whole lot would have if graded and sodded, with adequate and convenient space for parking, and that difference would measure the damages done by the taking. So that, while such facts may properly be considered in the formulation of an opinion by a witness as to value, they are not admissible as direct evidence of damages caused by the taking. Cases such as *Baltimore City v. Garrett, supra,* are not in point, for the rule stated in such cases is applicable only where the owner is compelled by law to make his property conform to an established grade, and he is assessed for benefits accruing from the proposed use of land taken.

The errors pointed out are sufficient to require a reversal of the judgment which will accordingly be ordered.

*Judgment reversed, and case remanded for a new trial.*