UNITED STATES v. 26,699 ACRES OF LAND, MORE OR LESS, IN LONG & McINTOSH COUNTIES, GA., et al.

No. 12496.

United States Court of Appeals
Fifth Circuit.

May 19, 1949.

A. Devitt Vanech, Asst. Atty. Gen., John F. Cotter, Harold S. Harrison, Attys., Dept. of Justice, Washington, D. C., Chas. D. Russell, Sp. Asst. to Atty. Gen., for appellant.

Charles L. Gowen, Brunswick, Ga., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

In 1944 the United States filed a petition for the condemnation of the year-to-year use for an indefinite period of 26,699 acres of land in the coastal area of Georgia, of which 9,000 acres were owned by the Georgia Timber Company and leased to the Appellees, as a part of a larger tract of 18,000 acres, for the total annual rental of $750. Appellees had a five-year lease with the privilege of renewal at a slightly higher rate for five additional years.

■ Both owner and lessees claimed compensation from the Government and it would have been more appropriate if both claims had been adjudicated at the same trial.[1] Originally the appellees sought $16,375 in damages. A portion of this was incurred expenditures. However, most of it was anticipated profits not made because of the taking. By virtue of these expenditures and the profits that could have been made appellees asserted that the unexpired lease had a value af $10,940. They showed that in 1943 they had put approximately a thousand head of cattle on this land but that upon receipt of information that condemnation of the land was impending, they removed the cattle therefrom in 1944. Much testimony as to what the appellees' profits might have been had the land not been taken by the United States was admitted, over the objection of counsel for the Government. The lower court let this testimony in so that the jury could take such profits into consideration in determining the value of the unexpired leasehold.

There is also evidence tending to show that appellees deemed themselves to have canceled the lease during much of the period of Government occupancy, wherein they paid little or no rent. (See letter in Footnote 2 below.)

■■ If the lease was canceled by appellees, no recovery ought to be had by them, or, if the lease was merely suspended because of the pendency of the condemnation proceedings, any damages to Appellees must be diminished by the annual rent which they were relieved from paying, if any.

■ In the condemnation proceedings the United States did not take the cattle, the business of appellees, nor the services of those skilled in that business, and the Government should not be required to pay for the business experience, skill, and services, nor the cattle, of the owners when same were in no wise acquired by the condemnation proceedings. There is no obligation to pay more than such part of the fair market value of the leasehold as exceeds the annual rental.

■ The trial Judge deviated from the true measure of compensation—fair market value of the leasehold, if any, over and above the rental charged—and admitted testimony as to anticipated profits, and informed the jury that they could take into consideration such profits for the purpose

---

[1] The landowner recovered some $7,000 as just compensation to it for the use of the same wild land during the occupancy by the Government.

[2] The following is an excerpt from a letter of August 29, 1944, from Williams Brothers to Georgia Timber Co.: "With reference to the future leasing of Pasture we feel that the only thing to do is to consider same cancelled and we would possibly be interested in taking another lease when the Government releases same."

of determining the value of the unexpired lease.[3]

The fair market value of the unexpired portion of appellees' lease in excess, if any, of the rental charged, must be ascertained unless Appellees by their letter of August 29, 1944 (referred to in Footnote 2), voluntarily canceled and surrendered their lease to the lessor; in which event no compensation would be recoverable by the appellees; and in any future trial of this case this issue should be determined. Moreover, the lower court in its charge to the jury did not clearly differentiate between just compensation and damages. Fair market value, of course, is the compensation to be paid for the property taken.[4] Damages in condemnation suits also may be allowed for injuries caused to other property not taken, but which injuries are derivative from the taking or the improvement made thereunder. If the appellees did not voluntarily surrender their lease, and if they did not voluntarily remove their cattle from the leased land, but did both because of the condemnation, then the appellees would be entitled to just compensation for the fair market value of their unexpired lease in the amount, if any, that same exceeded the rental to be paid, as well as any consequential damages, if any, directly and proximately caused by virtue of the taking in condemnation proceedings, to the cattle of the appellees, and it would be competent for proof on both of such phases of the case to be received, but the terms "compensation" and "damages" should be clearly observed and explained to the jury in any future trial.

The cause is reversed and remanded for a new trial.

Reversed and remanded.

---

[3] The following is an excerpt from the charge to the jury:

"In order to throw light upon this, evidence has been admitted to show that the business Williams Brothers was conducting on the premises was profitable and that earnings might reasonably have been expected from the grazing cattle on the property, and the use of the hunting rights had they been permitted to occupy the premises to the end of their term.

"Gentlemen, you would not be authorized to allow anticipated profits as such, but you may take such proof as there may be into consideration in determining the value of the unexpired leasehold at the time the property was taken by the government."

[4] United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729.