REINDOLLAR ET AL. *v.* KAISER ET UX.

[No. 161, October Term, 1949.]

*Decided May 10, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Joseph D. Buscher, Special Assistant Attorney General to State Roads Commission,* with whom were *Hall Hammond, Attorney General,* and *Charles Carroll, Jr.* on the brief, for the appellant.

*Charles E. Hogg* and *William Henry Forsythe, Jr.,* with whom was *John L. Clark* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by the State Roads Commission of Maryland, appellant, from a judgment in the Circuit Court for Howard County in a condemnation suit in-

318

stituted by it against Frederick A. Kaiser and Mary D. Kaiser, his wife, appellees, for land necessary for road purposes.

The petition for condemnation was filed in this case on May 26, 1948, and damages in the amount of $7,500 was returned by the jury, Judge Boylan presiding. A motion for a new trial by the defendants was granted and this case came up for trial again on November 7, 1949. The Inquisition returned by the jury in the instant case assessed damages in the amount of $12,500. From that judgment the appellant appeals.

The appellees are the owners of a 400 acre farm in Howard County. Some time previous to the instant case this 400 acre farm had been divided by the East-West dual highway known as Edmondson Avenue Extended or Baltimore National Pike. As a result 200 acres of appellees' land was on the north side of the highway and approximately 180 acres on the south side thereof. On this farm appellees raised cattle and even after the construction of the Edmondson Avenue Extension the cattle had free access to the whole farm through a short six by six passage way under that highway used as a drain.

In the case now before this Court the State Roads Commission sought the condemnation of an additional right of way to connect the Edmondson Avenue Extension with the road to Washington. After the construction of this new highway that portion of appellees' farm lying south of the Edmondson Avenue Extension was divided into two tracts, one of 111 acres upon which the barns and other buildings are located, and the other of 54 acres upon which there are no buildings but through which runs the main stream of water for the farm. Also by building this new highway the former six by six passage way under Edmondson Avenue Extended has been lengthened to approximately 250 feet so that cattle will not pass through it. The land taken is approximately 17 acres. As a result of this taking the east part of the south parcel where the buildings are located is prac-

tically cut off from the west portion where the main stream of water is located. The measure of the loss to the appellees is the value of the land taken at the time it is taken, and since the land taken is part of a larger tract the diminution in value of the larger tract is also to be considered, caused by the taking of the particular segment thereof. *Pumphrey v. State Roads Commission,* 175 Md. 498, 505, 2 A. 2d 668.

The appellant claims that the trial judge erred in charging the jury because he minimized the weight of the evidence and the credit to be given to the witnesses for the appellant. The appellant excepts to the following part of the charge: "The evidence as to the damages caused by the taking of land on the north side of the road is likewise conflicting. Dr. Mellor placed the value of the land taken, plus the consequential damages to the remainder at $6,500. Mr. Chenowith at $9,500 and Mr. Warfield at $7,000. On the other hand, Mr. Kearney placed the damages at *only* $1,926.60 * * * Mr. Pickett *only* thought that the land was worth $75.00 an acre, or $534.00 and * * *." (Emphasis supplied.) The appellant excepts to the Court using the word "only" because it claims that it tended to minimize the weight and effect of the testimony of appellant's witnesses and to that extent the charge was unfair, injurious and prejudicial.

Of course, the review of the evidence by the trial judge should be impartial. *Larkin v. Smith,* 183 Md. 274, 37 A. 2d 340. He, of course may call the attention of the jury to parts of the evidence which he thinks important and he may express his opinion upon the facts provided he informs the jury that all matters or facts are submitted for their determination. *Snyder v. Cearfoss,* 190 Md. 151, 57 A. 2d 786. As was said by Judge Sloan in the case of *Feinglos v. Weiner,* 181 Md. 38, at page 46, 28 A. 2d 577, 581: "We cannot put the trial judge in a strait-jacket, and prescribe or adopt a formula to be used and followed by him." Prior to the hereinbefore quoted part of the charge to which the appellant objects the Court said: "The testimony of the consequential

damages suffered by this land varies from $3,000 placed by Kearney and $3,874.40 placed by Mr. Pickett, to $7,500 placed thereon by Dr. Mellor, $7,000 placed thereon by Mr. Warfield and $7,944 placed thereon by Mr. Chenowith this morning. *It is for you to determine just how much should be allowed.*" (Emphasis supplied.) At the close of the charge the trial judge told the jury that it was their prerogative to determine the facts and the amount of damages to which the property owners were entitled. He further told them that they were the judges of the weight of the evidence and the credit to be given the witnesses. He further stated: "You will understand that nothing I have said is intended to influence you in the determination of the damages to which these property owners are entitled. That, gentlemen, is exclusively your prerogative and your duty." The word "only" in this case apparently was used by the trial judge to show the minimum amount and to distinguish the low appraisement from the high appraisement. He previously had instructed the jury that the evidence of the witnesses, who had testified as experts as to the value of the land, was to be considered in connection with all the evidence in the case and that such expert testimony should be given such weight as the jury determined. Error will not be found in an oral charge merely because of one or two words taken from the whole context and assigned as error. The charge as a whole must be considered. We see nothing unusual or prejudicial to the appellant in the use of this word.

The appellant also claims that the trial judge in his charge to the jury assumed facts concerning which there was no evidence. The appellant excepts to the following statement made by the judge: "Kaiser feeds cattle and handles quite a number each year. Before the building of the new road he was accustomed to feeding his cattle at the barn on this side of the property and to permit them to roam over to the stream on the west side of the new road to drink. He, of course, cannot do that now." It is claimed that there is no evidence concerning this

phase of the feeding and watering of Kaiser's cattle. With this contention of the appellant we cannot agree. One of appellant's witnesses, Arthur K. Pickett, testified that the feeding barn would accommodate from 75 to 100 cattle. Another of appellant's witnesses, J. Kearsley Kearney, testified as follows: "Q. So it would now be necessary to pump water to the cows in that barn, is that correct? A. There isn't any other water on the farm except that little stream around Rogers Avenue. Q. Which is not really accessible to Mr. Kaiser's farm even if it belonged to him? A. Oh, I think it is accessible, as far as that is concerned. It isn't as far—well, before the road came through there, Kaiser could turn his stock out of his barn out there and they had the run of the whole farm in connection with the big stream down to the bottom of the valley there, and I think that severance is a serious damage." The plats in the case show that the main stream flowing through the farm is cut off from the appellees' farm buildings by the road on the land condemned. Mr. Kearney further testified that the 111 acre tract would be lessened in value due to its being severed from the main supply of running water in the meadow. Mr. Pickett further testified that Mr. Kaiser could not take his cattle across the super speed highway to be built on the land condemned. Dr. Benjamin Mellor, Jr., one of appellee's witnesses, said that Mr. Kaiser would have additional costs by reason of having to pump water to all his stock. Mr. Norman H. Warfield, appellees' witness, testified that before a road was built on the land, here taken, the cattle could go through the underpass, "now they have—I don't think cattle would go through that 250 foot underpass." He further said: "In my severance damage on the South side of the road, I considered the fact that it was taking all the running water out of the place and I really don't see how they are going to make much use of that 50 acres of land now, from an agricultural standpoint." Mr. Elliott Chenowith, one of of appellees' witnesses, testified: "The water supply to this 114 acres was greatly reduced and

the free usage for cattle was made very expensive and hazardous." We are of opinion that there was ample evidence to justify the trial judge in making the comment here challenged.

Finally the appellant objects to the following statement of the trial judge in the charge: *"You may take into consideration the fact* that the Howard County Zoning Laws had not become operative at the time the property was taken, so that at that time it could have been utilized or sold for any purpose the owner decided to utilize or sell it." (Emphasis supplied.) The fact that zoning had not become effective in Howard County until after this taking was brought out at the trial of this case. Of course, the compensation to which the appellees in this case were entitled was the actual market value of the property condemned at the time of the taking. *Bonaparte v. M. & C. C. of Baltimore,* 131 Md. 80, 83, 101 A. 594. At the time the State Roads Commission took this land it was not zoned. Shortly after it was taken zoning laws came into effect in Howard County. At the time of the taking the owners could have used it for any purposes and this of course affected its value then and made it more valuable. It was certainly proper for the judge to call to the attention of the jury that the zoning laws were not in effect at the time of the taking and that it could have been utilized and used for any purpose, as this had been brought out in the testimony in the case. The appellant abandons the last point raised in its brief.

Taking the charge as a whole we do not find that the trial judge unduly stressed any facts in favor of the appellee. As was said by Chief Judge Marbury in the case of *Larkin v. Smith,* 183 Md. 274, *supra,* at page 284, 37 A. 2d at page 344: "It must be borne in mind that it is not the province of this court, nor was it its intention, when it adopted Rule 6, to prescribe any form in which the trial judge should instruct the jury. His words must necessarily be his own. Otherwise, his instructions would have to be couched in such general

language, and in such formal terms as to amount to nothing more than an ordinary written prayer. The whole purpose and intention of permitting and encouraging oral instructions to the jury was to permit the judge, in ordinary language, to discuss the various aspects of a case, which he and the jury have both just heard, and with which they are both immediately familiar. Error will not be found in an oral charge merely because of its method of expression. There must be something else, which must clearly appear to have prejudiced the appellant." We are of opinion that the judgment should be affirmed.

*Judgment affirmed, with costs.*