## VEIRS *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 288, September Term, 1957.]

546

548

*Decided July 19, 1958.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Donald K. Staley* and *Morgan L. Tenny* for the appellant.

*David E. Betts, Special Attorney for the State Roads Commission,* with whom were *C. Ferdinand Sybert, Attorney General, Joseph D. Buscher, Special Assistant Attorney General,* and *Robert S. Rothenhoefer, Special Attorney,* on the brief, for the appellee.

Brune, C. J., delivered the opinion of the Court.

The State Roads Commission (the "Commission"), appellee, instituted condemnation proceedings in this case, pursuant to Sec. 40B of Article III of the Maryland Constitution and Sec. 9 of Article 89B of the Code (1957 Ed.), in the Circuit Court for Montgomery County on August 10th, 1956, to acquire for highway purposes 2571 square feet in fee simple and easements in an additional 117 square feet on the westerly side of University Boulevard West at Wheaton.

(No difference affecting damages was made between the property taken in fee simple and that taken for easements.) The parcel to be taken by eminent domain was a part of a tract of approximately 6000 square feet owned by Arrel E. Godfrey and Sarah E. Godfrey (the "owners" or the "Godfreys"). It was improved by a building covering an area of approximately 1400 square feet. This building was rented for use as a grocery store by the appellant, Veirs, under an extension of a lease which was to expire on August 16, 1959, or possibly on some later date which has not been made clear to us. Space was also rented by another lessee, one Kurtz, in either the same building or an adjoining one for use as a barber shop. The Commission duly filed and recorded its plats; and on filing this suit, it paid into court the amount ($2,100) which it estimated as the fair value of the property.

During the trial and in the court's instructions to the jury, August 10, 1956, was treated as the date of taking and we shall so treat it in this opinion, even though under Code (1957), Article 89B, Sec. 9, and our decision in *LaFontaine's Heirs, etc. v. LaFontaine's Heirs, etc.,* 205 Md. 311, 107 A. 2d 653; the date of taking may have been later—when the Commission took actual possession of the property to be acquired. For practical purposes this seems to make no difference in the present case for two reasons: first, under Sec. 15 of the above Article of the Code, August 10, 1956, is the date as of which the valuation of the property is to be made; and second, because actual, physical possession was taken by the Commission prior to the agreement to cancel Veirs' lease, which is more fully referred to below.

The jury fixed the total damages for the taking at $14,600, and apportioned this amount as follows between the owners and the two lessees: $13,180 to the Godfreys; $1,200 to Veirs and $220 to Kurtz. Veirs appealed from the judgment entered upon the jury's inquisition. The Godfreys and Kurtz did not; and though they were notified of the appeal, they have taken no part in it. The Commission has not appealed from the judgment and does not challenge the aggregate amount of damages awarded or the apportionment thereof.

Veirs contends that the trial court was in error in instructing the jury "that the total allowance to all of the defendants in this case cannot exceed the value of the land taken plus the consequential damages"; and second, that the trial court was in error in instructing the jury that Veirs' leasehold interest in the property terminated as of October 31, 1957, the date as of which the lease was cancelled by mutual consent, though it would have continued but for this cancellation at least until August 16, 1959, and possibly longer. The Commission challenges both of Veirs' contentions, but suggests that if Veirs' second contention should be sustained, then the case should be remanded for a reapportionment of damages only as between the lessee, Veirs, and the owners, the Godfreys, but not for a new trial on total damages.

The instruction that the total allowance to all defendants could not exceed the value of the land taken plus the consequential damages, is in accord with the general rule adopted by this Court. *Gluck v. M. & C. C. of Baltimore,* 81 Md. 315, 32 A. 515; *M. & C. C. of Baltimore v. Latrobe,* 101 Md. 621, 61 A. 203; *M. & C. C. of Baltimore v. Gamse,* 132 Md. 290, 104 A. 429. Cf. *Lustine v. State Roads Comm.,* 217 Md. 274, 142 A. 2d 566. An exception to this rule was recognized in the *Latrobe* case, if the evidence should show that the value of the leasehold interest in property subject to an irredeemable ground rent exceeded the balance remaining after deducting from the value in fee simple of the property taken the value of the reversionary interest allocated to that property. Here we have a short term lease, not a ground rent; and we find nothing in the printed record which might serve to take the case out of the general rule by showing that the value of the sum of the parts exceeded the value of the whole. See *State Roads Comm. v. Novosel,* 203 Md. 619, 102 A. 2d 563.

Furthermore, we find no objection to the trial court's instructions on this subject, and that alone would bar review. Rule 554 e of the Maryland Rules.

We think that the appellant's objection to the instruction that his lease terminated on October 31, 1957, is well taken. The evidence shows that on August 10, 1956, he had a lease

which would run until August 16, 1959, or possibly longer—some three or perhaps four years after the date of taking. The testimony shows that after the Commission started construction on the property taken it installed a curb which cut off vehicular access to the appellant's store from the road in front of it. The area taken and the adjacent area in front of the store had been used largely as a parking lot for the appellant's customers. He felt that the denial of vehicular access to and from the road in front of his store so injured his business as to make the property useless to him. He so advised Mr. Godfrey orally over a period of several months, after construction work had begun. Finally, at the end of October, 1957, Veirs and the Godfreys agreed to a cancellation of the lease to take effect November 1st, 1957. A few weeks later—just before the trial of this case—the Commission, contrary to previous indications, agreed with the owners to cut the curb so as to permit vehicular access to the store formerly occupied by Veirs.

The court's instructions as to the valuation of the lease were as follows: "In determining the value of the leasehold interest you are not to consider the value of the business but you are only to consider the value of the lease for the value of the business is not a proper element of damage in this type of case. The value of the lease is the difference between the economic or market rent for the balance of the term and the contract or lease rent for the same period as of the time of taking on August 10, 1956, multiplied by the appropriate factor to capitalize this rent over the period."

Neither the appellant nor any other party made any objection to the foregoing instructions, which appear to have been based upon the *Gamse* and *Novosel* cases, in each of which a complete taking of the leasehold interest was shown or stipulated. We think that the evidence in the record extract is not sufficient to show a complete taking of the leasehold interest, despite Mr. Veirs' claim that the whole value of his lease was destroyed. The measure of damages to the lessee would, therefore, seem to be the difference in market value of the lessee's interest before and after the taking. What is the market value of the tenant's lease after the taking may

be affected by any of the terms of the lease (for example, whether he has to pay for alterations or repairs necessary to make the property tenantable), and it is, of course, directly affected by the amount of rent that he still has to pay. See *M. & C. C. of Baltimore v. Rice,* 73 Md. 307, 21 A. 181; and *Gluck v. M. & C. C. of Baltimore, supra; John Hancock Mutual Life Ins. Co. v. United States,* 155 F. 2d 977, *cert.* den., 329, U. S. 774.

The appellant did, however, object to the closely related instruction that his lease terminated as of October 31, 1957, on the ground that this limited the period for which he might be awarded damages to a much shorter period than the unexpired term of his lease. The court evidently construed these two instructions, taken together, in the same way. In a colloquy between the court and counsel for all of the parties which followed the giving of the instructions, the court informed counsel for the Godfreys that Veirs would be entitled to share in the total damages which might be awarded, but that under the instructions Veirs could not receive $10,000. This was the amount which Veirs' expert witness calculated as the amount of Veirs' loss on the assumption that the lease had four years to run after the date of the taking. (This colloquy appears in the transcript, but not in the printed record.)

As already stated, August 10, 1956, is the date as of which damages for the taking are to be determined. Code (1957), Article 89B, Sec. 15. This is not disputed by the Commission. See also the *LaFontaine's Heirs* case, *supra,* and *Reindollar v. Kaiser,* 195 Md. 314, 73 A. 2d 493, where the date of taking was held to be the date as of which valuation was to be determined. The net effect of the court's instructions was to limit the time for which the jury might apportion damages to the lessee to the period from August 10, 1956, to October 31, 1957. On August 10, 1956, which is treated as the time of the taking, this limitation did not exist. Ordinarily, changes in the property occurring after the date of taking do not affect ·the amount of damages or compensation to which a party may have become entitled. *Nichols, Eminent Domain* (3rd Ed.), Vol. 3, § 8.5, pp. 18, 21; 29 *C. J. S.,*

*Eminent Domain,* Sec. 185a; 18 *Am. Jur., Eminent Domain,* § 263. This rule, however, would not bar an agreement between the owners of different interests in the property as to their respective interests in the condemnation award. For example, in a case such as this, the lessee might, in consideration of the cancellation of the lease and his consequent release from the obligation to pay rent, assign to the lessor his claim for compensation covering the period between the date of cancellation and the date of termination as fixed by the terms of the lease. We find nothing in the printed record extract before us to show that any such agreement was expressly included in the cancellation agreement; but the court's emphasis on October 31st, 1957, as the date on which Veirs' leasehold interest terminated, taken in conjunction with his instruction as to the value of the lease and the colloquy above referred to, seems to have been predicated upon the theory that a necessary consequence of the cancellation was to transfer from the lessee to the lessor all rights in the fund to compensation for any period after the effective date of the cancellation.

Such a result was reached, without discussion or the citation of authority, in *United States v. 26,699 Acres of Land,* 174 F. 2d 367 (5th Cir., 1949). We think, however, that such a result would be inconsistent with prior holdings of this court in such cases as the *Gluck* and *Gamse* cases, above cited, in which the right of a lessee to compensation for the value of his interest taken by condemnation has been recognized as covering the balance of his term and as being vested from the time of the taking. See also the *Reindollar* case, *supra,* which allowed compensation to an owner in fee based upon the absence of zoning restrictions at the time of the taking, though they were subsequently imposed. In the instant case the lessee had acquired upon the taking a vested right to compensation in an amount to be fixed as of August 10, 1956. That right is to share in the fund deposited in court and in such additional amount (if any) as the Commission may be required to pay as a result of the trial of the condemnation proceedings. It is no longer a right in real estate as such. We see no reason for inferring a transfer of that

right solely from the cancellation of a lease covering the portion of the tract which was not taken under the eminent domain proceedings.

We think that the instruction limiting the extent of Veirs' recovery to a period less than that of the unexpired portion of his lease was erroneous, because it assumes that the cancellation of the lease of itself resulted in an assignment to the Godfreys of Veirs' interest in the award for the period after the date of cancellation. This, we think, does not necessarily follow, and therefore the judgment should be reversed.

The absence of any exceptions by the Godfreys to the instructions as to the valuation of Veirs' leasehold interest, we think (largely on the basis of the colloquy above mentioned), may well have been due to the coupling together of the instruction which seems to be founded upon the assumption of a complete taking of the lessee's interest and of the instruction which limited Veirs' rights to the period ending at the effective date of the cancellation. Therefore, it seems proper that both of these instructions and the premises upon which they rest should be open for further consideration upon remand of the case. The terms and effect of the agreement to cancel the lease will be among the questions which will be open.

This brings us to the Commission's suggestion that the case be remanded only for a redetermination of the apportionment of the total damages allowed, and we take it that the real controversy, if the Commission's suggestion is adopted, will be between Veirs and the Godfreys over the values of their respective interests and possibly the amount of the consequential damages of about $4,800 claimed by the Godfreys. The jury made no separate finding with regard to consequential damages, and we cannot tell what, if any, amount was awarded to the Godfreys therefor.

The trial judge's instructions as to the overall measure of damages were that the jury should consider the highest and best use of the land, that the owners were entitled to receive as an irreducible compensation the actual value of what was taken (whether in fee or by way of easement), that this value was to be determined by the difference between the fair market value of the entire tract of land before the taking and

its fair market value after the taking, and that if the jury should find that there were any consequential damages to the remainder of the tract these too should be allowed. These instructions were not objected to and were in accord with the rules stated in a number of cases decided by this Court. See (among many) *Johnson v. Consol. Gas Elec. Light & Power Co.,* 187 Md. 454, 50 A. 2d 918; *Realty Improvement Co. v. Consol. Gas Elec. Light & Power Co.,* 156 Md. 581, 144 A. 710; *State Roads Comm. v. Novosel, supra; Reindollar v. Kaiser, supra; State Roads Comm. v. Wood,* 207 Md. 369, 114 A. 2d 636; *Pumphrey v. State Roads Comm.,* 175 Md. 498, 2 A. 2d 668; *M. & C. C. of Baltimore v. Park Corp.,* 126 Md. 358, 95 A. 33; *Brack v. M. & C. C. of Baltimore,* 125 Md. 378, 93 A. 994.

Under these circumstances a retrial of the issue of overall damages would not seem to serve any useful purpose or to be called for. The controversies with regard to the total amount of damages for the taking and with regard to the apportionment thereof are severable. We think it appropriate to proceed under Rule 872 a of the Maryland Rules to affirm the judgment insofar as the total amount of damages is concerned and to reverse the judgment and remand the case for a new trial with regard to the apportionment of damages, including the effect of the cancellation of the lease.

> *Judgment affirmed as to total amount of damages awarded against the appellee, the State Roads Commission; and judgment reversed and case remanded for a new trial as to the apportionment of damages as between the owners and the lessee, Veirs; each party to pay his or its own costs on this appeal.*